# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL W. WOOD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-13-628-M** |
| | ) | |
| **TRACY MCCOLLUM, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

     Michael W. Wood, an Oklahoma prisoner appearing pro se, petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Pet. (Doc. No. 1) at 5-6.[2] Respondent filed his Answer and brief in opposition (Doc. No. 13) along with the relevant state-court records (*see* Doc. No. 15), to which Petitioner replied (Doc. Nos. 19, 20). United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for a report and recommendation in accordance with 28 U.S.C. § 636(b). As outlined herein, the undersigned recommends that the Petition be denied in part and dismissed without prejudice in part.

---

[1] Petitioner states that he is currently incarcerated at the Oklahoma State Reformatory ("OSR") in Granite, Oklahoma. *See* Change of Address (Doc. No. 25). The sole proper Respondent in an action under 28 U.S.C. § 2254 is the state officer who has custody of the petitioner. R. 2(a), R. Governing § 2254 Cases in U.S. Dist. Cts. Accordingly, OSR Warden Tracy McCollum is hereby substituted as Respondent in this proceeding. *See* R. 12, Rules Gov. Sect. 2254 Cases in U.S. Dist. Cts.; Fed. R. Civ. P. 25(d), 81(a)(4).

[2] Citations to documents filed electronically in this Court use the page numbers assigned by CM/ECF.

BACKGROUND

On August 13, 2008, Petitioner was charged in a felony Information with one count of first-degree murder. Pet. at 15; Pet'r's OCCA Br. (Doc. No. 13-1) at 24, *Wood v. State*, No. C-2011-548 (Okla. Crim. App. filed June 21, 2011). The charge stemmed from Petitioner's alleged involvement in the January 2005 disappearance and presumed death of Donovan Nimmo. An Amended Supplemental Information was filed in November 2008, adding a page reflecting Petitioner's two prior felony convictions in Oklahoma state court. Pet. at 15. In January 2009, the State filed a Special Bill of Particulars giving notice of its intent to seek the death penalty against Petitioner if he was convicted of first-degree murder. *See* Mot. Hr'g Tr. 20, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. June 13, 2011) (Doc. No. 15) (conventionally filed). The trial court soon thereafter appointed Craig Corgan from the Oklahoma Indigent Defense System's ("OIDS") capital trial division to represent Petitioner. *Id.*; Pet. at 16. According to Petitioner's testimony, Mr. Corgan advised Petitioner that, based on his review of the State's evidence, he thought it was "a possibility" that Petitioner would be sentenced to death if he went to trial. Mot. Hr'g Tr. 21.

The State offered Petitioner a plea agreement shortly after Mr. Corgan entered the case. *See id.* at 28-29, 30-31; Pet'r's OCCA Br. at 32. The proposed agreement called for Petitioner to plead guilty to first-degree murder and to assist law enforcement in recovering Mr. Nimmo's body. *See* Resp't's Ex. 4 (Doc. No. 13-4) at 1-4, Guilty Plea Form, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct.); Mot. Hr'g Tr. 28-29, 30-31 (Petitioner's testimony that the State's original offer was "the same offer" that he

2

ultimately accepted). In exchange, the State would "drop [the] death penalty" upon the trial court's acceptance of Petitioner's guilty plea. Guilty Plea Form at 4; *see also* Plea Hr'g Tr. 2, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. July 22, 2010) (Doc. No. 15); Mot. Hr'g Tr. 28-29, 30-31. The parties also stipulated that they would recommend that the court sentence Petitioner to life in prison with or without the possibility of parole, depending on whether Petitioner's information led to the recovery of Mr. Nimmo's remains. Guilty Plea Form at 4; *see* Mot. Hr'g Tr. 28-29, 30-31. Petitioner initially rejected the proposed plea agreement against Mr. Corgan's advice because he wanted to go to trial. *See* Mot. Hr'g Tr. 28-29, 30-31; Pet'r's OCCA Br. at 32-33.

Petitioner retained new counsel, Irven Box, in February 2010. Pet. at 4. Petitioner testified that he hired Mr. Box due to Petitioner's disagreement with Mr. Corgan's recommendation that he plead guilty. According to Petitioner, Mr. Box told Petitioner that he "ultimately . . . would receive the death penalty if [he] went to trial" and strongly urged Petitioner to take the State's original offer. *See* Mot. Hr'g Tr. 13, 14, 16, 21, 30-31; Pet'r's OCCA Br. at 33; OCCA Op. Den. Cert. (Doc. No. 13-2) at 4-5, *Wood v. State*, No. C-2011-548 (Okla. Crim. App. Nov. 29, 2012) ("[Petitioner] conceded that he was presented with the same plea offer by both his appointed counsel and his retained counsel.").

*A.      Guilty Plea and Direct Appeal*

Petitioner appeared with Mr. Box for a change-of-plea hearing before the District

Court of Blaine County, Oklahoma, on July 22, 2010.   The district court engaged

Petitioner in the following colloquy before accepting his guilty plea:

| | |
|---|---|
| THE COURT: | Mr. Wood, Mr. Box has handed me a form.  It's entitled plea of guilty/summary of facts as it applies to CF 08-44 as amended by striking the bill of particulars. |
| | Would you raise your right hand the best that you can?  (Defendant sworn.) |
| THE COURT: | Mr. Wood, did you with the aid and assistance of Mr. Box fill out this form? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Anybody force you, threaten you, or coerce you to do that? |
| THE DEFENDANT: | No, Your Honor. |
| THE COURT: | Is this a free and voluntary act on your part? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that if the Court accepts this you are entering a plea of guilty to this offense? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you further understand that the offense as amended carries two possible punishments; one is life without parole and the other is life with the possibility of parole, but that life with a possibility of parole is what is called an 85 percent crime and you must serve 85 percent of that term which the Department of Corrections has determined to be 45 years?  Do you understand that you must serve 85 percent before being eligible for parole?  Do you understand that? |

| | |
|---|---|
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | There also appears on this form a signature and Mr. Wood, I would ask you, is that your signature right here? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | At that time you signed that did you understand that you were swearing that the answers to all the questions contained therein were true and correct? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Based on that the Court will find that you have freely, knowingly, and with aid of counsel entered this plea and will accept it. |

Plea Hr'g Tr. 2-4.

The Form that the district court reviewed in open court—which contained Petitioner's actual guilty plea and admission that he "commit[ted] the acts as charged in the Information"—contained Petitioner's sworn statements affirming that he understood the constitutional rights he was giving up by pleading guilty, as well as the potential penalties he faced if the court accepted his guilty plea under the terms of this agreement.[3] *See* Guilty Plea Form at 1-4. The final page also contained the district court's express findings that Petitioner was "competent for the purpose of this hearing" and "underst[ood] the nature, purpose and consequences of this proceeding." *Id.* at 6.

---

[3] The state-court record that was filed with this Court does not include the felony Information or Amended Supplemental Information. The Guilty Plea Form contains the following handwritten factual basis supporting Petitioner's guilty plea, followed by Petitioner's signature: "On 19th & 20th of Jan[uary] 2005 in Blaine Co[unty] I along with Jennifer Durbin struck & killed Donovan Nimmo without justification. Michael Wood." Guilty Plea Form at 4.

On October 14, 2010, the district court sentenced Petitioner to life in prison without the possibility of parole. Pet'r's Ex. 1 (Doc. No. 4-1) at 2, J. & Sent., *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct.). Petitioner promptly filed two pro se motions in the trial court seeking to appeal his conviction and sentence. *See* Pet'r's Ex. 2 (Doc. No. 4-2) at 2-4, Pro Se Mots. filed Oct. 19 and 20, 2010, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct.). Petitioner alleged that he "never murdered" anyone and that he "fe[lt] . . . coerced into agreeing to the blind plea" because he was medicated and he feared being sentenced to death if he went to trial. *See id.* The district court construed Petitioner's filings as motions to withdraw his guilty plea and appointed new counsel to represent Petitioner at an evidentiary hearing.[4] *See* Pet'r's Ex. 8 (Doc. No. 4-8) at 11-13, Order Den. Mot. to Withdraw Guilty Plea, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. June 14, 2011). At the hearing on the motions, the judge found that Petitioner "failed to present sufficient evidence for the Court to grant his request" to withdraw the guilty plea, which the court found to be "free and voluntary" and otherwise "entered validly" by Petitioner. Mot. Hr'g Tr. 45. The district court denied Petitioner's motions in a written order the next day. *See* Order Den. Mot. to Withdraw Guilty Plea at 12.

---

[4] Because Petitioner pled guilty, he could appeal his conviction or sentence only by filing a petition for a writ of certiorari in the Oklahoma Court of Criminal Appeals ("OCCA"). *See Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012) (citing Okla. Stat. tit. 22, § 1051). First, however, Petitioner had to "file an application in the trial court to withdraw his plea within ten days of the judgment and sentence," and the trial court had to "hold an evidentiary hearing and rule on the application . . . within thirty days from the date the application was filed." *Id.* (citing OCCA R. 4.2(A)). If that court denied the application, Petitioner could then appeal his conviction by way of petition for writ of certiorari to the OCCA. *Id.*

Petitioner, represented by new court-appointed counsel, next filed a petition for writ of certiorari in the OCCA. *See generally* Pet'r's OCCA Br. at 1-51. His brief raised five grounds for relief under both federal and state law:

Proposition 1:   The district court failed to establish on the record that Petitioner was competent to plead guilty, resulting in acceptance of a guilty plea that was "not voluntary, knowing and intelligent";

Proposition 2:   Petitioner's guilty plea was not knowing and voluntary either because Mr. Box "affirmatively misrepresent[ed]" the amount of time that Petitioner would spend in prison, or because Mr. Wood "misunderst[ood]" Mr. Box's advice regarding the potential length of Mr. Wood's prison sentence;

Proposition 3:   The district court did not properly establish that Petitioner's guilty plea was supported by an adequate factual basis;

Proposition 4:   Petitioner was denied effective assistance of counsel when he entered his guilty plea and in his effort to withdraw his plea because both attorneys failed to investigate Petitioner's mental state on the date of the plea hearing; and

Proposition 5:   The errors in Petitioner's case cumulatively deprived him of a fair hearing and due process of law.

*See id.* at 25-30, 31-34, 35-39, 39-48, 48-49. Petitioner asked the OCCA to issue a writ of certiorari allowing him to withdraw his guilty plea and proceed to trial on the first-degree murder charge or to have his sentence favorably modified, or that he receive another hearing on his request to withdraw his plea. *See id.* at 49.

The OCCA affirmed Petitioner's conviction and sentence in an opinion entered November 29, 2012. OCCA Op. Den. Cert. at 1, 12. Petitioner's conviction became final for federal habeas purposes 90 days later, when Petitioner's time for filing a petition for a writ of certiorari in the United States Supreme Court expired. *See* Pet. at 5;

*Woodward v. Cline*, 693 F.3d 1289, 1292 (10th Cir. 2012); Sup. Ct. R. 13.1. Petitioner

did not seek postconviction relief in the state courts. *See* Pet. at 4-5.

B.     *Petition for Federal Habeas Relief*

Petitioner filed his federal habeas petition in this Court on June 17, 2013.[5]  As

drafted, Petitioner's pro se petition and brief in support—which largely correspond to his

counseled brief to the OCCA—reassert each of the federal claims that Petitioner raised

on direct appeal to the OCCA.  *Compare* Pet'r's Br. in Supp. (Doc. No. 4) at 15-64, *with*

Pet'r's OCCA Br. at 25-49.  The undersigned has considered the counseled OCCA brief

together with the Petition and has liberally construed all of Petitioner's pro se filings as

part of a review of "the facts and the pleadings" in order to "ascertain what occurred in

prior state proceedings and the true nature of Petitioner's claims" and to ensure that

"substantial justice" is done. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

"[T]he mandated liberal construction afforded to pro se pleadings 'means that if

the court can reasonably read the pleadings to state a valid claim on which the petitioner

could prevail, it should do so despite the petitioner's failure to cite proper legal authority,

his confusion of various legal theories, . . . or his unfamiliarity with pleading

requirements.'" *Id.* (internal brackets omitted) (quoting *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991)).  After careful review, the undersigned concludes that Petitioner's

pro se filings contain specific factual allegations—accepted as true strictly for purposes

---

[5] Respondent concedes the timeliness of Petitioner's federal habeas Petition.  Pet. at 7;
*see* Resp't's Br. in Opp'n (Doc. No. 13) at 2; 28 U.S.C. § 2244(d).

of deciphering the "true nature of Petitioner's claims" presented to this Court—that support the following grounds for federal habeas relief.  *See id.*

Ground 1:    The district court "failed to establish" "on the record" that Petitioner was competent to plead guilty and that his plea was knowing and voluntary.  *See* Pet'r's Br. in Supp. at 29-31, 33, 39.

Petitioner's guilty plea was involuntary because he was taking medication (Celexa) that "changed his personality by making him not care about his surroundings or what was happening to him[]." *See id.* at 31.

Ground 2:    Petitioner's guilty plea was unknowing or involuntary because he was not "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," Mr. Box.  *See id.* at 42-44.

Ground 3:    Petitioner's guilty plea was involuntary as a result of ineffective assistance of counsel because his attorney, Mr. Box, "affirmative[ly] misrepresent[ed]" the prison "sentence Petitioner would rec[ei]ve" if he pled guilty under the terms of this agreement.  *See id.* at 40-42.

Ground 4:    The district court did not properly establish that Petitioner's guilty plea was supported by an adequate factual basis.  *Id.* at 45-49.

Ground 5:    Mr. Box's failure to investigate Petitioner's mental status around the time of the change-of-plea hearing violated Petitioner's right to effective assistance of counsel.  *Id.* at 50-51, 53-55, 60.

Mr. Allsup's failure to call certain witnesses or to conduct certain investigations, as well as Mr. Allsup's exclusive reliance on Petitioner's hearing testimony to support Petitioner's motion to withdraw his guilty plea, violated Petitioner's right to effective assistance of counsel.  *Id.* at 50-51, 55-56, 60.

Ground 6:    "The state courts of Oklahoma denied Petitioner due process and equal protection of the law by treating Petitioner differently than sim[i]larly situated defendants in that the [OCCA's] refusal to remand Petitioner[']s case to the district court with instructions to let Petitioner withdraw his plea."  *Id.* at 61-63.

Ground 7:    The errors in Petitioner's case cumulatively deprived him of a fair hearing and due process of law.  *Id.* at 64.

Special explanation of the interpretation of Grounds 2 and 3 is required. In his filings in this Court, as in his filings before the OCCA, Petitioner asserts that his guilty plea was not intelligently made because Mr. Box "affirmative[ly] misrepresent[ed]" the prison sentence Petitioner would receive if he pled guilty. *See* Pet'r's Br. in Supp. at 41-42. More specifically, Petitioner alleges "Mr. Box told [him] that even though he was facing a life sentence, it did not necessarily mean that he would have to spend the rest of his life in prison. . . . Mr. Box told [Petitioner] that the sentence could be split where Petitioner would serve 20 [years] in or 25 [years] in, 20 [years] out." Petitioner also alleges that he had long "remained steadfast in exercising his right to take his case to trial," and that Mr. Box's explanation of the State's plea offer "affirmatively misle[]d" him into pleading guilty. *Id.* at 41-42. Petitioner makes these allegations as part of his assertion, in Ground 2, that his guilty plea was not knowing and voluntary. However, although Petitioner does not use the phrase "ineffective assistance of counsel" to describe Mr. Box's sentencing advice, factual allegations similar to Petitioner's have been held to implicate such a claim under *Hill v. Lockhart*, 474 U.S. 52 (1985).

"The long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alterative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771

(1970)).  The *Hill* Court's specific concern "with the quality of counsel's performance in advising a defendant whether to plead guilty stemmed from the more general principle," *id.* at 57, that "a defendant is entitled to 'the effective assistance of competent counsel'" when making this critical decision, *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann*, 397 U.S. at 771) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).  Consistent with that concern, the Supreme Court has "rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel" where those errors violate the defendant's Sixth Amendment right to effective assistance of counsel. *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012) (citing *Padilla*, 559 U.S. 356); *cf. Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) ("Rather than applying *Strickland*, the state court simply found that respondent's rejection of the plea [offer] was knowing and voluntary. An inquiry into whether the rejection of a plea is knowing and voluntary, however, is not the correct means by which to address a claim of ineffective assistance of counsel." (internal citation omitted) (citing *Hill*, 474 U.S. at 57-59)).

Thus, "[w]hen an involuntariness claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988) (citing *Hill*, 474 U.S. at 56-57), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991); *see, e.g.*, *United States v. Silva*, 430 F.3d 1096, 1099-1100 (10th Cir. 2005) (applying *Hill* to pro se petitioner's claim that his "plea was not knowing and voluntary because it was the product of an erroneous and coercive sentencing misrepresentation" by his attorney);

*Osborn v. Shillinger*, 997 F.2d 1324, 1328 & n.1 (10th Cir. 1993) (applying *Hill* to pro se petitioner's claim that his attorney's errors "coerced him to plead guilty" even though petitioner did not "directly state a claim of ineffective assistance of counsel"). That, in turn, requires the petitioner to demonstrate that plea counsel's erroneous advice was objectively unreasonable and that there is a reasonable probability that, but for counsel's error, petitioner "would have pleaded not guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

While Petitioner never expressly asserts that Mr. Box's plea advice constituted ineffective assistance of counsel, the factual allegations in the Petition nonetheless suggest a *Hill* claim that, if proven, would entitle Petitioner to a writ of habeas corpus under § 2254(a). *See Barnett*, 174 F.3d at 1133; *cf. Machibroda v. United States*, 368 U.S. 487, 494-96 (1962) (holding that the district court could not summarily dismiss prisoner's claim that his guilty plea was involuntary where the prisoner alleged facts that, "while improbable," would if true entitle him to relief under 28 U.S.C. § 2255). In accordance with the above authorities, the undersigned has liberally construed the Petition to assert a *Hill* claim (Ground 3) in addition to Petitioner's other claims.

ANALYSIS

Section 2254 of Title 28 of the United States Code authorizes federal courts to entertain petitions for a writ of habeas corpus on behalf of a convicted person claiming the right to be released from state custody "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), governs the federal courts' review of such petitions and "sets several limits on" their power to grant habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). *See generally* 28 U.S.C. § 2254(b)-(e). At issue here are the procedural prerequisite of exhaustion in § 2254(b), the substantive prerequisites of § 2254(d), and the merits of certain of Petitioner's claims.

A.    *Section 2254(b) – Exhaustion*

A federal court cannot grant a state prisoner's habeas petition unless the petition satisfies the procedural prerequisites of § 2254(b), including that the petitioner exhausted his or her state-court remedies by presenting "the substance" of the claims to the state's highest court. *Pinholster*, 563 U.S. at 181 (citing 28 U.S.C. § 2254(b), (c)); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (explaining that "the substance" of a habeas claim consists of both the necessary facts and explicit "reference to a specific federal constitutional guarantee"); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust, a petitioner "must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim" and giving the State the first "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted). The petitioner bears the burden of proving proper exhaustion. *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011).

"When a petitioner raises a new claim in federal court that is not barred on other procedural grounds, the federal court may, in appropriate circumstances, hold the federal case in abeyance to allow the petitioner to take his unexhausted claim back to state court

for adjudication." *Fairchild v. Workman*, 579 F.3d 1134, 1152 (10th Cir. 2009). Stay and abeyance is "available only in limited circumstances," where a petitioner who files a mixed habeas petition in federal court shows "good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).[6] The petitioner bears the burden of proving that a stay is appropriate in his or her case. *Id.* at 278.

Respondent asserts, and Petitioner concedes, that he did not exhaust the federal claims in Ground Six, in which Petitioner asserts that the OCCA's decision denying his request to let him withdraw his guilty plea violated Petitioner's rights to "due process and equal protection of the law," Pet. at 4 (capitalization and punctuation altered). *See* Resp't's Br. in Opp'n at 2, 31-36; Pet'r's Reply Br. at 6-7. Respondent urges this Court to deny the entire Petition on the merits even though Petitioner could still exhaust those claims by filing an initial application for postconviction relief in the state district court.

---

[6] Before *Rhines*, the Supreme Court's "total exhaustion rule" required district courts to either dismiss mixed habeas petitions without prejudice or allow the petitioner to amend the petition and proceed only with the exhausted claims. *Rhines*, 544 U.S. at 274, 278 (citing *Rose v. Lundy*, 455 U.S. 509, 520, 522 (1982)). After *Rhines*, a district court faced with a mixed petition has options that include: (1) staying federal-court proceedings and holding the petition in abeyance for a limited time; (2) allowing the petitioner to amend his or her petition by deleting the unexhausted claims; or (3) denying the entire petition on the merits. *See Rhines*, 544 U.S. at 277-78; 28 U.S.C. § 2254(b)(2). "[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines*, 544 U.S. at 278; *Fairchild*, 579 F.3d at 1154; *see also Carter v. Bigelow*, 787 F.3d 1269, 1282 (10th Cir. 2015) (citing *Rhines*, 544 U.S. at 275, 278).

*See* Resp't's Br. in Opp'n at 31-37 (citing 28 U.S.C. § 2254(b)(2), (c); OCCA R. 5.2(C));

Okla. Stat. tit. 22, § 1080; *accord Moore v. Gibson*, 27 P.3d 483, 487 (Okla. Crim. App.

2001) ("There are no [statutory] time limitations for the filing of an application for post-

conviction relief in a district court in Oklahoma."). In his reply brief, Petitioner asks "to

dismiss [Ground Six] without prejudice, or in the alternative for this [C]ourt to retain

jurisdiction . . . while Petitioner exhausts [the claims] in the Oklahoma Court of Criminal

Appeals." Pet'r's Reply Br. at 6-7. The undersigned construes Petitioner's request as a

motion to amend his Petition by deleting Ground Six, or, alternatively, to stay these

proceedings and hold the Petition in abeyance while Petitioner exhausts the claims in

state court.

Stay and abeyance is not appropriate in this case because Petitioner does not

explain why he purportedly "could not raise" his due process and equal protection claims

"until entering into this Court[']s jurisdiction." *See* Pet. at 4. To the extent Petitioner

blames his failure to exhaust on his lack of legal training, *see* Pet'r's Reply Br. at 3-6, this

argument must fail. Neither Petitioner's pro se status nor his unfamiliarity with

Oklahoma's postconviction procedures can establish "good cause" for failing to first

present these claims in state court. *See Doyle v. Abbott*, 330 F. App'x 703, 708 (10th Cir.

2009) (citing *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994)); *Abeyta v.

Estep*, 198 F. App'x 724, 727 (10th Cir. 2006); *Hurd v. Dinwiddie*, No. CIV-09-227-W,

2009 WL 2136616, at *5 (W.D. Okla. July 16, 2009) ("[A] rule that layman status in and

of itself constitutes good cause for failure to exhaust would render the exhaustion

requirement practically meaningless."). Accordingly, the undersigned recommends that

the Court grant Petitioner's request to dismiss the Ground Six claims without prejudice. *See Fairchild*, 579 F.3d at 1156; *Redmon v. Wiley*, 349 F. App'x 251, 255 (10th Cir. 2009) (citing *Rhines*, 544 U.S. at 278).

The undersigned also concludes that Petitioner did not exhaust his Ground Three *Hill* claim that his guilty plea was involuntary as a result of ineffective assistance of counsel. To "fairly present" this claim to the OCCA, Petitioner had to raise the claim's legal *and* factual substance—i.e., make explicit "reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief" under *Hill*—which he did not do. *See Gray*, 518 U.S. at 162-63.[7] That said, because the *Hill* claim was not clearly raised in the Petition, Respondent did not address it and, specifically, whether such a claim would be procedurally barred if Petitioner now attempted to exhaust it in state court. *See generally* Resp't's Br. in Opp'n at 2, 15-21; *Spears v. Mullin*, 343 F.3d 1215, 1234 (10th Cir. 2003) (recognizing that the State bears

---

[7] Although "[t]he petitioner need not cite 'book and verse on the federal constitution,'" his state-court filings must do "more than present[] 'all the facts necessary to support the federal claim.'" *Bland v. Sirmons*, 459 F.3d 999, 1101 (10th Cir. 2006) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1986)). While Petitioner's Proposition Two to the OCCA presented all of the facts necessary to state a *Hill* claim on direct appeal, the Sixth Amendment claim "inherent in those facts"—i.e., that Petitioner's guilty plea was involuntary *as a result of* ineffective assistance of counsel—"was never brought to the attention of the state courts." *Picard v. Connor*, 404 U.S. 270, 277 (1971); *see* Pet'r's OCCA Br. at 31-34. On the contrary, appellate counsel's arguments suggest that she and Petitioner chose *not* to argue on direct appeal that *Mr. Box's* plea advice amounted to ineffective assistance of counsel, and to instead focus on whether *Petitioner* actually understood the direct consequences of pleading guilty. *Compare* Pet'r's OCCA Br. at 31-37 (citing *Brady v. United States*, 397 U.S. 742, 755 (1970); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)), *with id.* at 39-48 (citing *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 688, 694). Petitioner does not allege that appellate counsel made any errors while representing him on direct appeal to the OCCA. *See generally* Pet'r's Br. in Supp. at 29-64; Pet'r's Reply Br. at 1-6.

the burden of asserting procedural default). Rather than directing a further response from Respondent on this issue, the undersigned analyzes the claim on the merits in Subsection C, below. 28 U.S.C. § 2254(b)(2).

B.    *Section 2254(d)*

The standard under which this Court must review Petitioner's properly exhausted grounds for relief depends on whether the OCCA adjudicated the relevant claims on the merits. *Cole v. Trammell*, 755 F.3d 1142, 1148 (10th Cir. 2014). "When a federal claim has been presented to a state court and the state court has denied relief," the federal habeas court must "presume[] that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094-95 (2013); *Harris v. Reed*, 489 U.S. 255, 264-65 & n.12 (1989). Either party may rebut this presumption. *Johnson*, 133 S. Ct. at 1096.

With the exception of Petitioner's Ground Three *Hill* claim, Respondent asserts, and Petitioner implicitly concedes, that the OCCA adjudicated each of Petitioner's remaining habeas claims on the merits in denying his petition for writ of certiorari. Resp't's Br. in Opp'n at 3; *see* Pet'r's Reply Br. at 6. Accordingly, this Court cannot grant relief unless Petitioner first shows that the OCCA's adjudication of at least one of those claims resulted in a decision that was

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013).

The requirements in § 2254(d) are reviewable only on the basis of the record that was before the state court. As is explicit in the text, a federal court's § 2254(d)(2) review must be limited to "the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) ("As the plain terms of the statute indicate, we . . . must not stray from the record before the state court in conducting [the § 2254(d)(2)] inquiry."); *Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012). The Supreme Court has clarified that § 2254(d)(1) review likewise must be made on the basis of "the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

Generally, "[a] decision is contrary to clearly established law if the state court applies a rule that contradicts the governing law" set forth in the holdings of Supreme Court cases. *Lafler*, 132 S. Ct. at 1390 (internal quotation marks omitted); *accord Carey v. Musladin*, 549 U.S. 70, 75 (2006) ("'[C]learly established Federal law' in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." (internal quotation marks omitted)). A decision "involves an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Section 2254(d) establishes a "'highly deferential standard' . . . that 'demands that state-court decisions be given the benefit of the doubt.'" *Dodd*, 753 F.3d at 982 (quoting *Pinholster*, 563 U.S. at 181). Indeed, it is not enough for a petitioner to persuade a federal court that his or her state-court conviction rests upon a violation of federal law or erroneous factual findings. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) ("[A]n 'unreasonable application of' [the Supreme Court's] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." (internal quotation marks omitted)); *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[E]ven if reasonable minds reviewing the record might disagree about the [factual] finding in question, on habeas review that does not suffice to supersede the [state] court's determination." (alteration and internal quotation marks omitted)). Rather, the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (discussing § 2254(d)(1)); *cf. Allen*, 558 U.S. at 301 (discussing § 2254(d)(2)). This is true even where the state court offers no justification for its apparent conclusion that a federal claim lacks merit. *See Richter*, 562 U.S. at 98-99, 102-03; *Williams v. Trammell*, 782 F.3d 1184, 1199-1200 (10th Cir. 2015).

1.   The OCCA's Rejection of Petitioner's *Boykin* Claim Was Reasonable and Consistent with Clearly Established Federal Law

Petitioner asserts in Ground One that he "was denied due process when the trial court failed to establish Petitioner was competent before accepting his plea[,] resulting in a plea that was not voluntary, knowing and intelligent." Pet'r's Br. in Supp. at 29. "A

plea of guilty is more than an admission of conduct; it is a conviction" entered against the accused without many of the constitutional guarantees that accompany a fundamentally fair trial. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002); *Brady v. United States*, 397 U.S. 742, 748 (1970). "Thus, the defendant must be competent to enter the plea and the plea must be knowing and voluntary." *Gonzales v. Tafoya*, 515 F.3d 1097, 1118 (10th Cir. 2008); *see also Godinez v. Moran*, 509 U.S. 389, 400-01 & n.12 (1993) (explaining the distinction between the "competency" inquiry and the "knowing and voluntary" inquiry). To be competent, the defendant must be able "to consult with his lawyer with a reasonable degree of understanding" and have a "rational" and "factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (internal quotation marks omitted). Federal courts will uphold a state-court guilty plea against a due-process challenge if the surrounding "circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996) (citing *Brady*, 397 U.S. 742; *Boykin*, 395 U.S. at 242-44). If a defendant is incompetent, or if his or her guilty plea is not "equally voluntary and knowing," then the conviction "has been obtained in violation of due process and is therefore void." *Boykin*, 395 U.S. at 243 n.5; *accord Godinez*, 509 U.S. at 396, 400-01.

Boykin clearly establishes that the state-court record must affirmatively "disclose" that the defendant made an informed choice to admit guilt and to forgo the constitutional guarantees associated with a fair trial. *Boykin*, 395 U.S. at 243-44; *Brady*, 397 U.S. at

747 n.4; *United States v. Davis*, 929 F.2d 554, 557-58 (10th Cir. 1991); *Sena v. Romero*, 617 F.2d 579, 580-81 (10th Cir. 1980). However, neither *Boykin* nor any other U.S. Supreme Court decision clearly establishes *how* state-court judges must make this determination. *See Godinez*, 509 U.S. at 401 n.13 ("As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence."); *Boykin*, 395 U.S. at 243-44 ("[C]ourts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought . . . ."); *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (noting that the plea colloquy outlined in Federal Rule of Criminal Procedure 11, which exists to help federal district judges make "the constitutionally required determination that a defendant's guilty plea is truly voluntary," has not itself "been held to be constitutionally mandated"); *cf. Iowa v. Tovar*, 541 U.S. 77, 88, 92 (2004) (explaining that the Supreme Court has never "prescribed any formula or script to be read to a defendant who states that he elects" to waive the Sixth Amendment right to counsel and that the "information a defendant must possess in order to make an intelligent election" depends "upon the particular facts and circumstances surrounding that [defendant's] case" (internal quotation marks omitted)).

Petitioner first objects that the district court did not "determine" whether Petitioner was competent to enter a valid guilty plea even though the court "was on notice that [Petitioner] had at some point in time been treated for a mental illness." *See* Pet'r's Br. in Supp. at 29, 30-31, 39. As on direct appeal, Petitioner challenges as perfunctory and

inadequate the district court's plea colloquy, *see* Plea Hr'g Tr. 2-4, and purported failure to "examine, evaluate and memorialize on the record" whether Petitioner was competent before accepting his guilty plea. *See generally* Pet'r's Br. in Supp. at 29-31, 33, 39; Pet'r's OCCA Br. at 25-30 (citing *Boykin*, 395 U.S. at 243). Although Respondent addresses the competency issue at some length, *see* Resp't's Br. in Opp'n at 7-14, neither Petitioner nor his appellate counsel discretely argued that Petitioner actually lacked "the *capacity* to understand the proceedings and to assist counsel," *Godinez*, 509 U.S. at 401 (emphasis added), when he appeared before the district court for the change-of-plea hearing on July 22, 2010.[8] *See generally* Pet'r's OCCA Br. at 25-30 (citing *Boykin*, 395 U.S. at 243); Mot. Hr'g Tr. 11-12.[9] Nor does Petitioner raise such a lack-of-competency

---

[8] "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez*, 509 U.S. at 401 n.12 (internal citations omitted). The distinction is a subtle one but matters for purposes of determining whether the OCCA's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, the clearly established federal law governing these separate due-process requirements. *Cf. id.* at 400-01 ("In addition to determining that a defendant who seeks to plead guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary.").

[9] For example, Petitioner testified at his motion-to-withdraw hearing that Celexa made him more amenable to the plea agreement because he did not "care so much about" what happened to him while he was taking the medication. Mot. Hr'g Tr. 11. But when Petitioner's counsel asked whether Celexa "affected your *ability to comprehend* that agreement," *id.* at 12 (emphasis added), Petitioner responded that he was "coerced into agreeing" to the plea deal because he "had been incarcerated for about two years without bond," he saw "no way of leaving jail," and he "didn't want to die." *Id.* Petitioner also testified that he became depressed and anxious while he was in jail awaiting trial for Mr. Nimmo's murder and that he had not experienced "any depression problems" before being detained. *See id.* at 24-25.

argument here, instead focusing upon the state courts' purported shortcomings in fulfilling the *Boykin* requirement to *establish* on the record Petitioner's ability to enter a valid guilty plea.  *See* Pet'r's Br. in Supp. at 29-31, 33, 39.

The OCCA acknowledged that the district court "accepted [Petitioner's] guilty plea without inquiring on the record about the questions on the [Guilty Plea Form] dealing with competency and [Petitioner's] mental state."  OCCA Op. Den. Cert. at 3.  In denying relief on this aspect of Petitioner's claim, however, the OCCA correctly found that the district court reviewed Petitioner's sworn answers to those questions and addressed Petitioner in open court, where the judge "was able to observe" that Petitioner "responded appropriately to all questions."  *Id.*; *see also* Plea Hr'g Tr. 2-4; Guilty Plea Form at 1-5.  Petitioner stated under oath that he was not "taking any medications or substances which affect[ed]" his "ability to understand the[] proceedings" and that he understood the constitutional rights he was giving up by pleading guilty, as well as the "two possible punishments" he faced if the district court accepted his guilty plea under the terms of this agreement.  Plea Hr'g Tr. 2-4; Guilty Plea Form at 1-5; *see also* OCCA Op. Den. Cert. at 3, 5.  The district court then found on the record that Petitioner was "competent for the purpose of [the plea] hearing" and that he "freely, knowingly, and with aid of counsel" entered his plea of guilty to first-degree murder as charged in the Information.  Plea Hr'g Tr. 4; Guilty Plea Form at 6.  Clearly established federal law requires nothing more.  *See Godinez*, 509 U.S. at 401 & n.13; *Brady*, 397 U.S. at 747 n.4; *Boykin*, 395 U.S. at 243-44.  Accordingly, Petitioner is not entitled to relief on this aspect of Ground One.

Petitioner also asserts in Ground One that his guilty plea was not "voluntary, knowing, and intelligent" because he was taking medication (Celexa) that "changed his personality by making him not care about his surroundings or what was happening to him[]." Pet'r's Br. in Supp. at 31. The OCCA rejected Petitioner's claim because it determined that "the trial court's ruling that [Petitioner] entered a knowing and voluntary plea [was] supported by the record" on direct appeal, including Petitioner's own testimony both at the change-of-plea hearing and at the hearing on his motions to withdraw his guilty plea. *See* OCCA Op. Den. Cert. at 3, 5-6.

"Whether a guilty plea is knowing and voluntary under the constitution is a question of federal law," "but this legal conclusion rests on factual findings and inferences from those findings." *Osborn*, 997 F.2d at 1327; *Fields v. Gibson*, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing *Parke v. Raley*, 506 U.S. 20, 35 (1992)). A conviction entered on a guilty plea "comport[s] with due process" so long as "circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *See Cunningham*, 92 F.3d at 1060. Although a defendant's mental illness is "relevant to the general inquiry, it does not in itself establish that the plea violated a defendant's due process rights." *See Gonzales*, 515 F.3d at 1118. Rather, mental illness and psychiatric treatment are factors that courts must consider in determining whether the defendant made a "deliberate, intelligent choice" to plead guilty with a sufficient "understanding of what the plea connotes" and of its likely consequences. *Id.* (internal quotation marks omitted); *accord*

*Brady*, 397 U.S. at 749 ("The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it.").

The OCCA identified the correct governing legal principle in concluding that Petitioner's guilty plea must be "knowing and voluntary" in order to sustain his conviction. *See* OCCA Op. Den. Cert. at 2 ("[T]he trial court may accept the plea provided the court is satisfied that the defendant understands the consequences of entering a plea and that the plea is knowing and voluntary."). Thus, the OCCA's decision to deny relief on this aspect of Petitioner's claim "precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). Evaluating whether a state court's application of a rule was reasonable "requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). The "knowing, intelligent, and voluntary" plea standard is a general and fact-dependent one, *see Ruiz*, 536 U.S. at 629; *Miles v. Dorsey*, 61 F.3d 1459, 1465 (10th Cir. 1995), so the OCCA had wide "latitude to reasonably determine" that Petitioner failed to rebut the district court's rulings in this case. *Cf. Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation and internal quotation marks omitted)). This Court also must

presume that the state courts' factual findings, including any implicit determinations regarding the weight assigned to conflicting evidence, are correct absent a rebuttal of that presumption. *See Hoffman v. Young*, 23 F. App'x 885, 887-88 (10th Cir. 2001); *Smith v. Gibson*, 197 F.3d 454, 459 (1999) (citing *Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983)); 28 U.S.C. § 2254(e)(1).

At the hearing on the motions to withdraw the plea, Petitioner initially testified that Celexa made him more amenable to the State's plea offer because while he was taking the medication he did not "care so much about" what happened to him. *See* Mot. Hr'g Tr. 11-12. The OCCA found, however, that Petitioner's "other testimony" about the relevant circumstances "refuted [Petitioner's] claim that his medication influenced his decision to enter a plea." OCCA Op. Den. Cert. at 4. Significantly, Petitioner

> testified that he did not agree with the attorney appointed from [OIDS] . . . because that attorney strongly urged him to accept the prosecution's plea offer. [Petitioner] conceded that he was presented with the same plea offer by both his appointed counsel and his retained counsel and that he firmly rejected it when it was presented by his appointed counsel. He was on the same medication that supposedly made him more agreeable when he rejected the offer the first time when it was presented by appointed counsel. It appears from [Petitioner's] testimony that it was not the medication that motivated him to accept the prosecution's plea offer, but the prosecution's willingness to dismiss the Bill of Particulars. [Petitioner] agreed that a contributing factor to his depression was the possibility of receiving the death sentence, and, further, that the plea agreement dismissed the Bill of Particulars. [Petitioner] said he "just had to do it to escape the death penalty." He said he understood the terms of the plea agreement and that "the death penalty was being taken away." He said that he accepted the same offer when presented by his retained counsel "as a last chance."

OCCA Op. Den. Cert. at 4-5; *see* Mot. Hr'g Tr. 13-16, 21-27, 28-29, 30-31.

The district court also concluded that Petitioner "failed to present sufficient evidence for the Court to grant his request" to withdraw the guilty plea, which that court determined to be "free and voluntary" and otherwise "entered validly" by Petitioner. *See* Mot. Hr'g Tr. 45. In making this determination, the district court cited evidence that Petitioner "did not rush into the plea" and was represented by two "very experienced attorneys" who recommended that he accept the State's plea offer in order to avoid a substantial risk that he would be sentenced to death if he went to trial. *See id.* at 43-45. The district court also implicitly rejected Petitioner's hearing testimony to the extent that it conflicted with Petitioner's sworn statements on the Guilty Plea Form and his prior testimony during the change-of-plea hearing. *See id.*

Petitioner does not challenge the state courts' findings of historical fact concerning the plea proceeding. *See* Pet'r's Br. in Supp. at 39; Pet'r's Reply Br. at 3-6. Instead, he asserts only that OCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law requiring "that a guilty plea must be voluntary, knowing and intelligently made." *See* Pet'r's Reply Br. at 3-6.

The undersigned disagrees. The OCCA identified the correct governing legal principles, and it reasonably applied those principles in concluding that the evidence before it on appeal, including Petitioner's own testimony, adequately supported the district court's conclusion that Petitioner made a "deliberate, intelligent choice," *Gonzales*, 515 F.3d at 1120, "to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty," *Brady*, 397 U.S. at 749; *see Hoffman*, 23 F. App'x at 887-88 (denying relief under

§ 2254(d) where, "though the evidence conflict[ed]," the state court's determination that petitioner's plea was knowing and voluntary was "supported by record evidence," including petitioner's sworn statements at the change-of-plea hearing); *Freisinger v. Keith*, No. CIV-09-836-C, 2011 WL 4526761, at *3-5 (W.D. Okla. July 28, 2011) (R. & R.) (finding that the state courts reasonably rejected petitioner's claim that medication rendered his guilty plea unknowing and involuntary where petitioner previously stated under oath that "he understood the nature and consequences of the proceedings" and that "he was not taking any medication or substance which would affect his ability to understand the proceedings"), *adopted*, 2011 WL 4502298 (W.D. Okla. Sept. 28, 2011), *and appeal dismissed*, 473 F. App'x 846 (10th Cir. 2012). Accordingly, Petitioner is not entitled to relief on Ground One.

### 2. The OCCA's Rejection of Petitioner's *Brady* Claim Was Reasonable and Consistent with Clearly Established Federal Law

Petitioner asserts in Ground Two that his conviction was "obtained in violation of due process" because Petitioner was not "fully aware of the [guilty plea's] direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." Pet'r's Br. in Supp. at 40, 42 (citing *Boykin*, 395 U.S. at 243; *Brady*, 397 U.S. at 755). This claim reasserts the *Brady* claim that Petitioner presented to the OCCA on direct appeal. There, Petitioner argued that his conviction was "obtained in violation of due process" because, in light of Mr. Box's "affirmative misrepresentations . . . regarding what sentence [Petitioner] would receive" if he pled guilty, Petitioner was not "fully aware of the [plea's] direct consequences, including the

actual value of any commitments made to him by . . . his own counsel." Pet'r's OCCA

Br. at 32-34 (citing *Brady*, 397 U.S. at 755; *Boykin*, 395 U.S. at 243).

The OCCA reviewed Petitioner's claim under Oklahoma's plain-error standard

because Petitioner did not raise this argument at the hearing on Petitioner's motions to

withdraw his guilty plea, where he was represented by OIDS-appointed attorney Blayne

Allsup. *See* OCCA Op. Den. Cert. at 6; Mot. Hr'g Tr. 2; *State v. Wood*, No. CF-2008-44

(Blaine Cnty. Dist. Ct.) (docket entries of May 25 and 26, 2011). The OCCA noted

Petitioner's testimony to the effect that Mr. Box had told him "that a life sentence 'could

mean a split sentence of 20 in or 25 in, 20 out.'" OCCA Op. Den. Cert. at 6 (quoting

Mot. Hr'g Tr. 28). However, Petitioner also

> admitted that the trial judge correctly advised him at the plea hearing that
> the range of punishment was life with the possibility of parole and life
> without the possibility of parole and that a sentence of life with the
> possibility of parole required the service of 85% of a life sentence
> calculated as 45 years before [Petitioner] would be eligible for parole.
> [Petitioner] conceded that he did not ask his attorney about any possible
> misunderstanding about the meaning of a life sentence after the plea
> colloquy. [Petitioner] also acknowledged that the plea agreement provided
> that he would receive a sentence of life with the possibility of parole on the
> condition that information he provided led to the recovery of the victim's
> body and a sentence of life without the possibility of parole if it did not.

*Id.* at 6-7 (footnote omitted); *see generally* Mot. Hr'g Tr. 6-31. The OCCA concluded

that Petitioner "ha[d] not shown that he is entitled to relief under the plain error doctrine"

because his "testimony about a split sentence was not credible" and he "never claimed

that he was expecting any type of split sentence or that his plea was based on any

representation by retained counsel that he would receive a split sentence." OCCA Op.

Den. Cert. at 7 (citing *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006)).

To satisfy Oklahoma's plain-error standard, Petitioner needed to establish the existence of a "plain or obvious" deviation from a legal rule (i.e., error) that "affected the outcome of the proceeding." *Hogan*, 139 P.3d at 923. Even then, however, the OCCA will "correct plain error only if the error seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." *Id.* (internal quotation marks omitted) (citing *Simpson v. State*, 876 P.2d 690, 701 (Okla. Crim. App. 1994)). In Petitioner's case, the OCCA's failure to find plain error amounted to a conclusion that Mr. Box's erroneous sentencing prediction, if such a prediction was made at all, did not affect the outcome of Petitioner's plea proceedings. *See* OCCA Op. Den. Cert. at 7; *see also id.* at 12 ("There are no errors, either individually or when considered in a cumulative fashion, that merit relief in this case.").

Because the OCCA's rejection of the claim that Petitioner's guilty plea was "obtained in violation of due process," *Boykin*, 395 U.S. at 243 n.5, was an adjudication on the merits of that federal claim, this Court must defer to the OCCA's decision unless it was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Douglas v. Workman*, 560 F.3d 1156, 1178-79 (10th Cir. 2009); *Thornburg v. Mullin*, 422 F.3d 1113, 1125, 1138 (10th Cir. 2005). Petitioner argues that the OCCA's rejection of this claim resulted in a decision that is both "contrary to" and an "unreasonable application of" the clearly established federal law requiring "that a plea must be voluntary, knowing and intelligently made." Pet'r's Reply Br. at 3.

*Brady* and *Boykin* clearly establish that a guilty plea must be intelligent and is not so if a defendant is not accurately informed about the "direct consequences" of the plea. *See Brady*, 397 U.S. at 748; *Boykin*, 395 U.S. at 242-44. Generally, this means that the defendant must be aware of the mandatory minimum and potential maximum penalties prescribed by statute. *See, e.g.*, *Crump v. Wilkinson*, 520 F. App'x 775, 779 (10th Cir. 2013) ("We conclude that the plea agreement, which contained Crump's statement acknowledging that he understood the minimum and maximum penalties, belies his contention that the plea was unknowing and involuntary."); *Clark v. Mullins*, 179 F. App'x 551, 555 (10th Cir. 2006) ("In accepting a guilty plea, a trial court must make sure that the accused has a full understanding of what the plea connotes and of its consequences, including the maximum penalty to which the accused may be exposed." (citing *Boykin*, 395 U.S. at 243-44)). Although a guilty plea may be unknowing or "involuntary when an attorney materially misrepresents the consequences of the plea," neither an attorney's "erroneous sentence estimate" nor "a defendant's erroneous expectation, based on his attorney's erroneous estimate," necessarily means that a defendant's resulting conviction violated his or her federal due-process rights. *Fields*, 277 F.3d at 1213-14. Instead, the plea's validity "can be determined only by considering all of the relevant circumstances surrounding it,"[10] *Brady*, 397 U.S. at 749, including

_____

[10] As noted, *supra* n.7, the two-part *Strickland* test applies where the "petitioner relies entirely on the claim that his plea was 'involuntary' *as a result of* ineffective assistance of counsel because his attorney" misadvised him during the plea process. *Hill*, 474 U.S. at 57 (emphasis added); *accord Lafler*, 132 S. Ct. at 1390 (citing *Hill*, 474 U.S. at 57-59); *Frye*, 132 S. Ct. at 1406 (citing *Padilla*, 559 U.S. 356); *Worthen*, 842 F.2d at 1184 (citing *Hill*, 474 U.S. at 56-57); *Bush v. Neet*, 400 F.3d 849, 853 (10th Cir. 2005) (citing

whether the defendant was nonetheless "fairly apprised of the consequences of his plea" and whether the decision to plead guilty was actually "based on" counsel's sentencing advice. *See Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269, 1271-72 (10th Cir. 2010).

During the plea colloquy, the district court explained to Petitioner that he faced "two possible punishments" if the court accepted his guilty plea under the terms of the plea agreement and that, even if Petitioner was sentenced to the less severe option of life in prison with the possibility of parole, Petitioner "must serve . . . 45 years" before he would be eligible for release. Plea Hr'g Tr. 3; *see also* OCCA Op. Den. Cert. at 6-7. Petitioner testified that he understood the court's admonishment. Plea Hr'g Tr. 3. "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings." *Fields*, 277 F.3d at 1214. Thus, it would not have been unreasonable for the OCCA to conclude that, had Petitioner prior to the plea colloquy actually "misunderstood or been misinformed about [a] possibility" of serving only 20 or 25 years in prison, the district court's "discussion would have alerted [him] to that fact." *Id.* The OCCA also reasonably found that Petitioner "never claimed that he was expecting any type of split sentence or that his plea was based on any representation by retained counsel that he would receive a split sentence." OCCA Op. Den. Cert. at 7; *see* Mot. Hr'g Tr. 28-30; 28 U.S.C. § 2254(d)(2).

---

*Worthen*, 842 F.2d at 1184). The federal claim in Ground Two of the Petition, and in Proposition Two of Petitioner's OCCA brief, focuses not on whether *Mr. Box's* advice amounted to ineffective assistance of counsel, but on whether *Petitioner* in fact understood the direct consequences of pleading guilty.

The OCCA's decision rejecting Petitioner's claim is consistent with clearly established federal law and based on a reasonable determination of the facts in light of the evidence presented in the state-court proceedings. *See Fields*, 277 F.3d at 1214-15; *Crump*, 520 F. App'x at 779; *Brady*, 397 U.S. at 748; *Boykin*, 395 U.S. at 242-44. Accordingly, Petitioner is not entitled to relief on Ground Two.

### 3. Petitioner's Factual Basis Claim Is Not Cognizable Under 28 § 2254(a)

Petitioner asserts in Ground Four that he "was denied due process because an adequate factual basis to support the charge of murder in the first degree" was not established before the trial court accepted his guilty plea. Pet'r's Br. in Supp. at 45. In particular, Petitioner objects that the "factual basis" statement on his Guilty Plea Form—in which Petitioner admitted that he and his codefendant "struck [and] killed Donovan Nimmo without justification"—did not establish the elements of first-degree murder under Oklahoma law. *See id.* at 45-49; Guilty Plea Form at 4. Reviewing for plain error, the OCCA rejected this claim because it concluded that "[t]he evidence adduced at the preliminary hearing supplied the necessary additional factual support to cure any shortcoming in the statement of the factual basis on the plea form itself." OCCA Op. Den. Cert. at 7-9; *see* Prelim. Hr'g Tr. 152-53, 189, 191, 279-81, 287, 310-19, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. Dec. 11-12, 2008) (testimony regarding Petitioner's alleged involvement in Mr. Nimmo's disappearance and death). In reaching that conclusion, the OCCA noted the "extensive evidence" presented at that preliminary hearing and credited the district court's observation at the motion-to-withdraw hearing

that "[t]he evidence in the case described with some specificity the violent death that Donovan Nimmo met after being lured to Watonga, Blaine County, by Mr. Wood and his codefendant." OCCA Op. Den. Cert. at 8-9 (citing Mot. Hr'g Tr. 43-44).

"[C]ourts are constitutionally required to establish the factual basis of the plea only if the defendant claims factual innocence when he pleads guilty." *Washington v. Workman*, 376 F. App'x 823, 824-25 (10th Cir. 2010) (citing *Alford*, 400 U.S. at 37-38). Petitioner did not proclaim his factual innocence when he entered his guilty plea on July 22, 2010. *See* Plea Hr'g Tr. 2-4; Guilty Plea Form at 4; *see also* Mot. Hr'g Tr. 44 ("[Petitioner's] manifestation of innocence on his pro se [post-plea motions] is not consistent with the evidence" presented at his "preliminary hearing and in [Petitioner's] admission on his plea form"). Thus, the Constitution did not require the district court to establish a factual basis for Petitioner's guilty plea before entering a judgment of conviction, and Petitioner's Ground Four "does not state a constitutional violation." *See Washington*, 376 F. App'x at 824-25; *Green v. Koerner*, 312 F. App'x 105, 108 (10th Cir. 2009); *Perkis v. Sirmons*, 201 F. App'x 648, 651 (10th Cir. 2006); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971); *Farley v. Miller*, No. CIV-07-1036-C, 2009 WL 395206, at *10 (W.D. Okla. Feb. 17, 2009) ("[G]iven that Petitioner did not make a claim of factual innocence during his plea hearing, there is no federal constitutional issue concerning the factual basis of his guilty plea.").

Petitioner's assertion that he must personally admit the material facts supporting his conviction likewise finds no support in the governing federal law. *See* Pet'r's Br. in Supp. at 45 (citing *King v. State*, 553 P.2d 529 (Okla. Crim. App. 1976)). "A plea of

guilty is the equivalent of admitting all material facts alleged in the charge," *United States v. Kelsey*, 15 F.3d 152, 153 (10th Cir. 1994), which in this case is all that the Constitution requires to sustain Petitioner's conviction. *See Alford*, 400 U.S. at 32 ("Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements . . . even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment."). Accordingly, Petitioner is not entitled to relief on Ground Four. *See Washington*, 376 F. App'x at 825; *Farley*, 2009 WL 395206, at *10.

> 4.   The OCCA's Rejection of Petitioner's Ineffective-Assistance-of-Counsel Claims Was Reasonable and Consistent with Clearly Established Federal Law

Ground Five contains two ineffective-assistance-of-counsel claims. Petitioner first asserts that Mr. Box, who represented Petitioner at his change-of-plea hearing, was ineffective because he failed to request "medical records from the jail" showing that "Petitioner was being treated and medicated for a major mental illness in the months leading up to and on the actual day his plea was entered." Pet'r's Br. in Supp. at 53-54. Petitioner also asserts that Mr. Allsup, who represented Petitioner at the hearing on his motions to withdraw his guilty plea, was ineffective because he relied solely on Petitioner's testimony about his mental state in July 2010 without calling Petitioner's family members to corroborate that testimony or "conduct[ing] a minimal amount of

follow-up investigation" about these family members or Celexa's known side effects. *Id.* at 55-56.

To prevail on an ineffective-assistance-of-counsel claim, Petitioner must show that counsel's challenged acts or omissions fell below an objective standard of professional reasonableness (the "performance" prong) and that there is a reasonable probability that, but for those unprofessional errors, the result of the proceeding would have been different (the "prejudice" prong). *Strickland*, 466 U.S. at 690-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding at issue. *Id.* at 694; *see also Hill*, 474 U.S. at 59-60 (defendant's decision to plead guilty); *Garcia v. Bravo*, 181 F. App'x 725, 731 (10th Cir. 2006) (denial of defendant's motion to withdraw guilty plea). *Strickland*'s performance and prejudice prongs can "be addressed in any order, and failure to satisfy either is dispositive." *Hooks*, 689 F.3d at 1186.

The OCCA correctly identified the legal standard governing Petitioner's ineffective-assistance-of-counsel claims with respect to Messrs. Box and Allsup. *See* OCCA Op. Den. Cert. at 9-10. The appellate court rejected both claims on the merits, however, because it concluded that Petitioner's

> ability to reject the same plea offer while on the same medication coupled with his statements about accepting the plea offer to avoid the death penalty was sufficient to defeat his claim that the medication made him so agreeable and so indifferent to his fate that he was rendered incompetent. The district court properly rejected [Petitioner's] claim of incompetency and he has not shown that either of his counsel [was] ineffective.

*Id.* at 11.

The OCCA did not specify whether its denial of Petitioner's *Strickland* claims was because counsel's alleged errors were not professionally unreasonable, or because Petitioner did not suffer prejudice, or both. *See id.* Nonetheless, this Court must defer to the OCCA's conclusion unless Petitioner shows that "there was no reasonable basis for the state court to deny relief" on these claims given the record before it at the time.[11] *Richter*, 562 U.S. at 99, 102; *see also Pinholster*, 563 U.S. at 180-81.

Petitioner has not done so. To prevail on his claim regarding Mr. Box, Petitioner had to show that counsel's failure to investigate was objectively unreasonable and that there is a "reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59-60. Where, as here, trial counsel's alleged error is a failure to investigate, the court's determination of

> whether the error prejudiced the defendant by causing him to plead guilty
> rather than go to trial will depend on the likelihood that discovery of the

---

[11] As on direct appeal, Petitioner's arguments in support of his ineffective-assistance-of-counsel claims rely heavily on affidavits and medical records that Petitioner's appellate counsel obtained while preparing the petition for writ of certiorari to the OCCA. *See* Pet'r's Br. in Supp. at 50-51, 54-56, 60; Pet'r's OCCA Br. at 40-41, 43-48; Pet'r's Appl. Evid. Hr'g (Doc. No. 4-9) at 2-5, *Wood v. State*, No. C-2011-548 (Okla. Crim. App.) (citing OCCA R. 3.11(B)(3)(b)). The OCCA denied Petitioner's request for an evidentiary hearing to develop these claims because it concluded that Petitioner's jail medical records and his family members' affidavits "failed to show by clear and convincing evidence that there [was] a strong possibility that trial counsel was ineffective for failing to investigate his competency and use available evidence either at the plea hearing or at the hearing on his motion to withdraw [his] plea." OCCA Op. Den. Cert. at 10-11 (citing OCCA R. 3.11; *Simpson v. State*, 230 P.3d 888, 905-06 (Okla. Crim. App. 2010)). In so doing, the OCCA "necessarily" decided that Petitioner had "'not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*.'" *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013) (quoting *Simpson*, 230 P.3d at 906).

evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59 (internal quotation marks omitted).

Petitioner testified that Mr. Corgan and Mr. Box separately advised him to accept the State's plea offer because, based on their review of the State's evidence, both attorneys expected that Petitioner would be convicted and sentenced to death if he went to trial. *See* Mot. Hr'g Tr. 14, 21. Petitioner rejected Mr. Corgan's advice, but he later accepted Mr. Box's advice as his last chance "to escape the death penalty" because he trusted Mr. Box's assessment of the case and he "didn't want to die." *See id.* at 12, 14-15, 26. Although Petitioner alleges that he would not have pled guilty "but for" Mr. Box's "errors," he never explains how (or even whether) the information in his jail records or his family members' affidavits might have persuaded a rational person to take his or her chances at trial or would have affected Mr. Box's recommendation as to the plea. *Hill*, 474 U.S. at 59-60; *see also Padilla*, 559 U.S. at 372 ("[T]o obtain relief on [an ineffective-assistance] claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). Thus, the OCCA could have reasonably concluded that Mr. Box's failure to investigate Petitioner's psychiatric treatment did not prejudice his client. *See Hill*, 474 U.S. at 59-60; *McLuckie v. Abbott*, 337 F.3d 1193, 1202 (10th Cir. 2003) (denying relief under § 2254(d)).

To prevail on his claim regarding Mr. Allsup, Petitioner had to show that counsel's decision to rely exclusively on Petitioner's hearing testimony was objectively unreasonable and that there is a reasonable probability that, but for that decision, the

district court would have granted Petitioner's motions to withdraw his guilty plea. *Garcia*, 181 F. App'x at 731. As he did on direct appeal, Petitioner asserts that had Mr. Allsup "conducted a minimal amount of follow-up investigation, he would have discovered that several members of Petitioner[']s family were willing and available to testify about the changes in [Petitioner's] behavior" while he was taking Celexa.[12] Pet'r's Br. in Supp. at 56. Liberally construed, Petitioner here contends that there is a reasonable probability that his family members' testimony would have persuaded the district court that Celexa's alleged side effects made Petitioner "so agreeable and so indifferent to his fate," OCCA Op. Den. Cert. at 11, as to invalidate his guilty plea. *See* Mot. Hr'g Tr. 11-13; Pet'r's Br. in Supp. at 54-56; Pet'r's OCCA Br. at 44-47.

The OCCA effectively rejected this argument when it concluded that the family members' affidavits "failed to show" that Mr. Allsup "was ineffective for failing to . . . use available evidence . . . at the hearing on [Petitioner's] motion to withdraw [his] plea." OCCA Op. Den. Cert. at 10-11; *accord Lott*, 705 F.3d at 1213. While the exact basis for its decision is not clear, the OCCA could have reasonably concluded that Mr. Allsup's "failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented" at Petitioner's motion-to-withdraw hearing did not undermine confidence in the district court's ruling. *Snow v. Sirmons*, 474 F.3d 693, 729,

---

[12] More specifically, Petitioner asserts that his father and children would have testified that, "at some point" before he pled guilty, Petitioner started acting "spacey" and "confused" and did not appear to appreciate the seriousness of the situation. *See* Pet'r's Ex. 9 (Doc. No. 4-9) at 9, Ronald Wood Aff., *Wood v. State*, C-2011-548 (Okla. Crim. App.); Pet'r's Ex. 9 at 10, Miranda Wood Aff., *Wood v. State*, C-2011-548 (Okla. Crim. App.); Pet'r's Ex. 9 at 12, Mike Wood Aff., *Wood v. State*, C-2011-548 (Okla. Crim. App.).

730-31 (10th Cir. 2007); *see* Mot. Hr'g Tr. 9-13, 18, 25-26 (Petitioner testifying at length as to his taking of Celexa and its effects); *see also Williams*, 782 F.3d at 1216 ("Even if other witnesses might have offered additional details or unique perspectives, we fail to see how the exclusion of this largely cumulative evidence might undermine confidence in the outcome.").

The district court denied Petitioner's motion to withdraw his guilty plea because it found that Petitioner "failed to present sufficient evidence for the Court to grant [that] request" and the evidence supported a finding that Petitioner's plea was valid. *See* Mot. Hr'g Tr. 43-45. In particular, the district court cited evidence that Petitioner "did not rush into the plea," stated before the plea hearing that he was not taking any medications that affected his ability to understand the proceedings, and was represented by two "very experienced attorneys" who recommended that he accept the State's plea offer in order to avoid a substantial risk that he would be sentenced to death if he went to trial. *See id.* On this record, the OCCA could have concluded that there was not a reasonable probability that the family members' additional testimony would have changed the district court's ruling. *See Williams*, 782 F.3d at 1216; *Snow*, 474 F.3d at 729. Accordingly, Petitioner is not entitled to relief on his claims regarding Messrs. Box and Allsup.

5.    The OCCA's Rejection of Cumulative Error Claim Was Reasonable and Consistent with Clearly Established Federal Law

Petitioner asserts in Ground Seven that the errors in his case cumulatively deprived him of a fair hearing and due process of law. Pet'r's Br. in Supp. at 64. The OCCA rejected this claim because it found "no errors, either individually or when

considered in a cumulative fashion, that merit[ed] relief in this case." OCCA Op. Den. Cert. at 12 ("[A] cumulative error claim has no merit when this Court fails to find any error on appeal.").

The "cumulative error" doctrine is an extension of the harmless-error doctrine, *Cargle v. Mullin*, 317 F.3d 1196, 1220 (10th Cir. 2003), in which the reviewing court aggregates all of the federal constitutional "errors that individually might be harmless and analyzes whether their cumulative" impact "so infected" the criminal proceeding "with unfairness as to make the resulting conviction a denial of due process." *Thornburg*, 422 F.3d at 1137 (internal quotation marks omitted). The federal courts of appeals "are split on 'whether the need to conduct a cumulative-error analysis is clearly established federal law' for AEDPA purposes—and [the Tenth Circuit's] position on the question is murky at best."[13] *Eizember v. Trammell*, 803 F.3d 1129, 1147 n.8 (10th Cir. 2015) (quoting *Hooks*, 689 F.3d at 1194 n.24). It is beyond dispute, however, that the cumulative-error doctrine applies only where there are two or more actual errors. *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003); *see also United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.").

---

[13] However, the Tenth Circuit has also noted that its decisions "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See Cole*, 755 F.3d at 1177 n.14 (internal quotation marks omitted); *cf. Bland v. Sirmons*, 459 F.3d 999, 1029 (10th Cir. 2006) ("Because the OCCA concluded that the cumulative errors did not deprive [the petitioner] of a fair trial, we must defer to its ruling unless it constitutes an unreasonable application of the cumulative-error doctrine.").

In sum, the OCCA reasonably concluded that Petitioner did not establish the existence of any federal constitutional error in his case, and the undersigned likewise "ha[s] identified here no harmless federal law errors to accumulate." *Eizember*, 803 F.3d at 1147 n.8. Accordingly, Petitioner is not entitled to relief on this claim.

C.     *De Novo Review of Ground Three*

Finally, Petitioner has been found to assert in Ground Three that his guilty plea was involuntary as a result of ineffective assistance of counsel because Mr. Box "affirmatively misrepresent[ed]" the amount of time that Petitioner would spend in prison if he pled guilty under the plea agreement. *See* Pet'r's Br. in Supp. at 41-42. Petitioner states a *Hill* claim insofar as these allegations support a reasonable inference that (1) Mr. Box's advice that Petitioner's agreed-upon term of life imprisonment "could be split where Petitioner would serve 20 [years] in or 25 [years] in, 20 [years] out" was objectively unreasonable given the information available to Mr. Box at the time; and (2) there is a reasonable probability that, but for Mr. Box's advice, Petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see* Pet'r's Br. in Supp. at 41-42.

To proceed with this claim in federal court, however, Petitioner must at least demonstrate that the facts alleged in his Petition are not "so palpably incredible" or "so patently frivolous or false" when compared to the record before this Court "as to warrant summary dismissal" for that reason alone. *Blackledge v. Allison*, 431 U.S. 63, 75-76 (1971). That record includes Petitioner's prior sworn statements and other relevant testimony, *see id.* at 75-77, as well as "[a]ny state-court findings of fact that bear upon

the claim," *Hooks*, 689 F.3d at 1164.  The former "carry a strong presumption of verity" and "constitute a formidable" (but not insurmountable) barrier to federal habeas relief on this claim.  *Blackledge*, 431 U.S. at 75-76; *see also Gaskey v. Hartley*, 280 F. App'x 746, 748 (10th Cir. 2008) ("[W]e have specifically held that a [federal] district court does not err in refusing to hold an evidentiary hearing on the voluntariness of a plea when the habeas petitioner's allegations are contradicted by his statements during the [state-court] plea colloquy." (citing *Lasiter v. Thomas*, 89 F.3d, 699, 702-04 (10th Cir. 1996)).  The latter "are entitled to a presumption of correctness rebuttable only by 'clear and convincing evidence.'"  *Hooks*, 689 F.3d at 1164 (quoting 28 U.S.C. § 2254(e)(1)).  Petitioner has not carried either burden.

Petitioner alleges that he wanted to go to trial on the first-degree murder charge and that he decided to plead guilty only after "Mr. Box explained the plea offer in a different way than [how] Mr. Corgan had it explained it previously."[14]  Pet'r's Br. in Supp. at 41-42.  The OCCA found that Petitioner's "testimony about a split sentence was not credible" and Petitioner "never claimed that he was expecting any type of split sentence or that his plea was based on any representation by retained counsel that he would receive a split sentence."  OCCA Op. Den. Cert. at 7.  Presumably, this means that Petitioner failed to establish by a preponderance of the evidence that Mr. Box actually told Petitioner that he could serve a split sentence.  *See Holland v. Jackson*, 542 U.S. 649, 654 (2004) (per curiam).  The state court's findings alone, which Petitioner does not

---

[14] Presumably, Petitioner means to suggest that Mr. Corgan did *not* tell Petitioner that the agreed-upon term of life imprisonment "could be split where Petitioner would serve 20 [years] in or 25 [years] in, 20 [years] out."

challenge, may well be sufficient to defeat Petitioner's *Hill* claim in this Court. *Cf. Burt v. Titlow*, 134 S. Ct. 10, 17 (2012) ("It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance. . . . [W]ithout evidence that [counsel] gave incorrect advice . . . [Petitioner] cannot establish that his performance was deficient." (internal quotation marks and citations omitted)).

Even if Mr. Box did provide the challenged advice, however, Petitioner still must establish that the advice was both deficient and prejudicial. *Strickland*'s performance and prejudice prongs can "be addressed in any order, and failure to satisfy either is dispositive." *Hooks*, 689 F.3d at 1186. In this case, Petitioner's allegation that if not for Mr. Box's advice that his life "sentence could be split" between 25 years "in" and 20 years "out," he would have pled not guilty and would have insisted on going to trial is "'wholly incredible' in light of the detailed state court record." *Lasiter*, 89 F.3d at 703 (quoting *Phillips v. Murphy*, 796 F.2d 1303, 1305 (10th Cir. 1986)). First, during the plea colloquy, the district court explained to Petitioner that he faced "two possible punishments" if the court accepted his guilty plea under the terms of the plea agreement and that, even if Petitioner was sentenced to the less severe option of life in prison with the possibility of parole, Petitioner "must serve . . . 45 years" before he would be eligible for release. Plea Hr'g Tr. 3; *see also* OCCA Op. Den. Cert. at 6-7. Petitioner testified that he understood the court's admonishment, Plea Hr'g Tr. 3, and that he had not been "promised anything by anyone to have [him] enter [his] plea[]," Guilty Plea Form at 4-5.

Second, Petitioner testified at his motion-to-withdraw hearing that Mr. Box and Mr. Corgan each strongly urged Petitioner to accept the State's plea offer in order to avoid the risk that he would be sentenced to death if he went to trial on the first-degree murder charge. *See* Mot. Hr'g Tr. 21, 28. Petitioner testified that he heeded Mr. Box's advice as his last chance "to escape the death penalty" because he trusted Mr. Box's assessment of the case and he "didn't want to die." *See id.* at 12, 14-15, 26. Indeed, Petitioner repeatedly stated under oath that he pled guilty to eliminate the risk that a jury would sentence him to death if he went to trial, and that he understood that this particular plea agreement called for "two possible" terms of life imprisonment. *See, e.g.*, *id.* at 12, 13, 14, 15, 24, 26, 27, 31; Plea Hr'g Tr. 3; Guilty Plea Form at 4-5. The OCCA credited this testimony in finding that the "prosecution's willingness" not to seek the death penalty "motivated" Petitioner to plead guilty under the terms of the agreement. *See* OCCA Op. Den. Cert. at 4-5, 11. Those terms included Petitioner's sworn stipulation that he would serve at least 45 years in prison. Plea Hr'g Tr. 3; Guilty Plea Form at 4.

Viewed against this record, Petitioner's allegation that, but for Mr. Box's alleged advice that the agreed-upon life sentence "could be split" essentially in half, Petitioner would not have pleaded guilty and would have insisted on going to trial on a capital murder charge is so palpably incredible as to warrant summary dismissal. *See Blackledge*, 431 U.S. at 73-74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the

face of the record are wholly incredible."); *Lasiter*, 89 F.3d at 703 (citing *Blackledge*, 431 U.S. at 74). Petitioner's *Hill* claim should be denied.

## RECOMMENDATION

As detailed above, it is recommended that the Petition for Writ of Habeas Corpus (Doc. No. 1) be denied, with the exception of the unexhausted claims raised in Ground Six, which should be dismissed without prejudice.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by February 23, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 2nd day of February, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE