# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL W. WOOD,                    )
                                    )
      Petitioner,                   )
                                    )
v.                                  )      Case No. CIV-13-628-M
                                    )
JOE M. ALLBAUGH, Director, [1]      )
                                    )
      Respondent.                   )

## REPORT AND RECOMMENDATION

Michael W. Wood, an Oklahoma prisoner appearing pro se, petitioned this Court

for a writ of habeas corpus under 28 U.S.C. § 2254. Pet. (Doc. No. 1) at 1-7.[2]

Respondent filed his Answer and brief in opposition (Doc. No. 13) along with the

relevant state-court records (*see* Doc. Nos. 13, 14, 15), to which Petitioner replied (Doc.

Nos. 19, 20). United States District Judge Vicki Miles-LaGrange has referred the matter

to the undersigned Magistrate Judge for report and recommendation.

As discussed below, the undersigned recommends that Petitioner's motion to

amend (Doc. No. 47) be granted and the unexhausted claims that caused his § 2254

---

[1] Because Petitioner is now confined at a private prison in Sayre, Oklahoma, current
Oklahoma Department of Corrections Director Joe M. Allbaugh is substituted as
Respondent in this matter. *See* Doc. No. 39; Okla. Dep't of Corr., *Director's Office*,
https://www.ok.gov/doc/Organization/Director's_Office/ (last visited Dec. 18, 2016); R.
2(a), R. Governing § 2254 Cases in U.S. Dist. Cts.

[2] Citations to documents filed electronically in this Court use the page and exhibit
numbers assigned by CM/ECF. When quoting from Petitioner's pro se filings, the
undersigned has occasionally corrected capitalization, punctuation, and unambiguous
abbreviations or spelling errors to improve readability.

petition to be a "hybrid" petition be deemed deleted. Further, the undersigned recommends that the Petition (Doc. No. 1), so amended, be denied.

## BACKGROUND

On August 13, 2008, Petitioner was charged in a felony Information with one count of first-degree murder. Pet'r's Br. in Supp. (Doc. No. 4) at 15, 28; Pet'r's OCCA Br. (Doc. No. 13-1) at 24, *Wood v. State*, No. C-2011-548 (Okla. Crim. App. Dec. 5, 2011). The charge stemmed from Petitioner's alleged involvement in the January 2005 disappearance and presumed death of Donovan Nimmo. Pet'r's Br. in Supp. at 27-28. In January 2009, the State filed a Special Bill of Particulars giving notice of its intent to seek the death penalty if Petitioner was convicted of first-degree murder. *See* Mot. Hr'g Tr. 20, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. June 13, 2011) (Doc. No. 15) (conventionally filed). The trial court appointed Craig Corgan from the Oklahoma Indigent Defense System's ("OIDS") capital trial division to represent Petitioner. *Id.*; Pet'r's Br. in Supp. at 16.

The State offered Petitioner a plea agreement shortly after Mr. Corgan entered the case. *See* Mot. Hr'g Tr. 28-29, 30-31; Pet'r's OCCA Br. at 32. The proposed agreement called for Petitioner to plead guilty to first-degree murder and to assist law enforcement in recovering Mr. Nimmo's body. *See* Resp't's Ex. 4 (Doc. No. 13-4) at 1-4, Guilty Plea Form, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. July 22, 2010). In exchange, the State would "drop [the] death penalty" upon the trial court's acceptance of Petitioner's guilty plea. Guilty Plea Form at 4; *see also* Plea Hr'g Tr. (Doc. No. 13-3) at 2-3, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. July 22, 2010); Mot. Hr'g Tr.

28-29, 30-31.  The parties also stipulated that they would recommend the court sentence Petitioner to life in prison with or without the possibility of parole, depending on whether Petitioner's information led to the recovery of Mr. Nimmo's body.  Guilty Plea Form at 4; *see* Mot. Hr'g Tr. 28-29, 30-31.  Petitioner initially rejected the proposed plea agreement against Mr. Corgan's advice because he wanted to go to trial.  *See* Mot. Hr'g Tr. 28-29, 30-31; Pet'r's OCCA Br. at 32-33.

Petitioner retained new counsel, Irven Box, in February 2010.  Pet'r's Br. in Supp. at 16.  Petitioner testified that he hired Mr. Box due to Petitioner's disagreement with Mr. Corgan's recommendation that he plead guilty.  *See* Pet'r's OCCA Br. at 32-33.  According to Petitioner, Mr. Box also told Petitioner that he "would receive the death penalty if [he] went to trial" and strongly urged Petitioner to take the State's original offer.  *See* Mot. Hr'g Tr. 13, 14, 16, 21, 28-29, 30-31; Pet'r's OCCA Br. at 33; OCCA Op. Den. Cert. (Doc. No. 13-2) at 4-5, *Wood v. State*, No. C-2011-548 (Okla. Crim. App. Nov. 29, 2012) ("Wood conceded that he was presented with the same plea offer by both his appointed counsel and his retained counsel.").

A.    *Guilty Plea and Direct Appeal*

Petitioner appeared with Mr. Box for a change-of-plea hearing before the District Court of Blaine County, Oklahoma, on July 22, 2010.  The trial judge engaged Petitioner in the following colloquy before accepting his guilty plea:

> THE COURT:    Mr. Wood, Mr. Box has handed me a form.  It's entitled plea of guilty/summary of facts as it applies to CF 08-44 as amended by striking the bill of particulars. . . .  Mr. Wood, did you with the aid and assistance of Mr. Box fill out this form?

3

| | |
|---|---|
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Anybody force you, threaten you, or coerce you to do that? |
| THE DEFENDANT: | No, Your Honor. |
| THE COURT: | Is this a free and voluntary act on your part? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that if the Court accepts this you are entering a plea of guilty to this offense? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you further understand that the offense as amended carries two possible punishments; one is life without parole and the other is life with the possibility of parole, but that life with a possibility of parole is what is called an 85 percent crime and you must serve 85 percent of that term which the Department of Corrections has determined to be 45 years? Do you understand that you must serve 85 percent before being eligible for parole? Do you understand that? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | There also appears on this form a signature and Mr. Wood, I would ask you, is that your signature right here? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | At that time you signed that did you understand that you were swearing that the answers to all the questions contained therein were true and correct? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Based on that the Court will find that you have freely, knowingly, and with aid of counsel entered this plea and will accept it. |

Plea Hr'g Tr. 2-4. The form that the trial judge reviewed in open court—which contained Petitioner's actual plea of guilty and admission that he "commit[ted] the acts as charged in the Information"—contained Petitioner's sworn statements affirming that he understood the constitutional rights he was giving up by pleading guilty, as well as the potential penalties he faced if the court accepted his guilty plea under the terms of this agreement.[3] *See* Guilty Plea Form at 1-4. The final page also contained the trial judge's findings that Petitioner was "competent for the purpose of this hearing" and "underst[ood] the nature, purpose and consequences of this proceeding." *Id.* at 6.

On October 14, 2010, the trial court sentenced Petitioner to life in prison without the possibility of parole. Pet'r's Ex. 1 (Doc. No. 4-1) at 2, J. & Sent., *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct.). Petitioner promptly filed two pro se motions seeking to appeal his conviction and sentence. *See* Pet'r's Ex. 2 (Doc. No. 4-2) at 2-4, Pro Se Mots., *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. filed Oct. 19 and 20, 2010). Petitioner alleged that he "never murdered" anyone and that he "fe[lt] . . . coerced into agreeing to the blind plea" because he was medicated and he feared being sentenced to death if he went to trial. *See id.* The trial court construed Petitioner's filings as motions to withdraw his guilty plea and appointed new counsel,

---

[3] The state-court record that was filed with this Court does not include any charging documents. The Guilty Plea Form contains the following handwritten factual basis supporting Petitioner's guilty plea, followed by Petitioner's signature: "On 19th & 20th of Jan[uary] 2005 in Blaine Co[unty] I along with Jennifer Durbin struck & killed Donovan Nimmo without justification. Michael Wood." Guilty Plea Form at 4.

Blayne Allsup, to represent Petitioner at an evidentiary hearing.[4] *See* Pet'r's Ex. 8 (Doc. No. 4-8) at 11-13, Order Den. Mot. to Withdraw Guilty Plea, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. June 14, 2011). At the hearing on the motions, the judge found that Petitioner "failed to present sufficient evidence for the Court to grant his request" to withdraw the guilty plea, which the judge found to be "free and voluntary" and otherwise "entered validly" by Petitioner. Mot. Hr'g Tr. 45. The trial court denied Petitioner's motions in a written order the next day. *See* Order Den. Mot. to Withdraw Guilty Plea at 12.

Petitioner, represented by new court-appointed counsel, then filed a petition for writ of certiorari in the OCCA. *See generally* Pet'r's OCCA Br. at 1-51. His brief raised five grounds for relief under federal and/or Oklahoma law:

Proposition 1: "The trial court failed to establish" that Petitioner was competent, resulting in the acceptance of a guilty "plea that was not voluntary, knowing and intelligent";

Proposition 2: Petitioner's guilty "plea was not knowing and voluntary because it was entered as a result of inadvertence, ignorance, misunderstanding, or misapprehension" concerning Petitioner's potential term of imprisonment;

Proposition 3: The trial court did not establish that Petitioner's plea of guilty to first-degree murder was supported by "an adequate factual basis";

---

[4] Because Petitioner pled guilty, he could appeal his conviction or sentence only by filing a petition for a writ of certiorari in the Oklahoma Court of Criminal Appeals ("OCCA"). *See Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012) (citing Okla. Stat. tit. 22, § 1051). But first Petitioner had to "file an application in the trial court to withdraw his plea within ten days of the judgment and sentence," and the trial court had to "hold an evidentiary hearing and rule on the application . . . within thirty days from the date the application was filed." *Id.* (citing OCCA R. 4.2(A)). Petitioner could appeal his conviction by way of petition for writ of certiorari to the OCCA after the trial court denied the application. *Id.*

Proposition 4:    Petitioner was denied effective assistance of counsel when "entering his guilty plea and at the hearing on the motions to withdraw [the] plea" because both attorneys failed to investigate Petitioner's "mental state and the medications he was taking when he entered his plea"; and

Proposition 5:    The errors in Petitioner's case cumulatively deprived him of a fair hearing and due process of law.

*See id.* at 25-30, 31-34, 35-39, 39-48, 48-49.  Petitioner asked the OCCA to issue a writ of certiorari allowing him to withdraw his guilty plea and proceed to trial on the first-degree murder charge, or to have his life sentence favorably modified, or to order another evidentiary hearing on his request to withdraw his plea.  *See id.* at 49.

The OCCA affirmed Petitioner's conviction and sentence in an opinion entered November 29, 2012.  OCCA Op. Den. Cert. at 1, 12.  Petitioner's conviction became final for federal habeas purposes ninety days later, when Petitioner's time for filing a petition for a writ of certiorari in the United States Supreme Court expired.  *See* Pet. at 5; *Woodward v. Cline*, 693 F.3d 1289, 1292 (10th Cir. 2012); Sup. Ct. R. 13.1.  Petitioner did not seek postconviction relief in the state courts.  *See* Pet. at 4-5.

B.     *Federal Habeas Proceedings*

Petitioner filed his § 2254 Petition in this Court on June 17, 2013.[5]  As drafted, Petitioner's pro se Petition and brief in support raise each of the five grounds for relief that Petitioner raised in his counseled brief on direct appeal to the OCCA.  *Compare* Pet'r's Br. in Supp. at 15-64, *with* Pet'r's OCCA Br. at 25-49; *see also* R. & R. (Doc. No. 26) at 8.  Petitioner's pro se pleadings also include a new "Ground V," in which

---

[5] Respondent concedes that the Petition was timely filed. Pet. at 7; *see* Resp't's Ans. (Doc. No. 13) at 2; 28 U.S.C. § 2244(d).

Petitioner asserts for the first time that the OCCA's decision rejecting Petitioner's request to withdraw his guilty plea "denied Petitioner due process and equal protection of the law by treating Petitioner differently [than] other similarly situated defendants." Pet. at 4; *see also* Pet'r's Br. in Supp. at 3, 14, 61-63.

1.    Initial District Court Proceedings

In a previous Report and Recommendation, the undersigned concluded that Petitioner's pro se filings contained "specific factual allegations" that, "accepted as true strictly for purposes of deciphering the 'true nature of Petitioner's claims' presented to this Court," reasonably supported seven grounds for federal habeas relief. R. & R. at 8-9 (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). The undersigned also concluded that the Petition was a "mixed petition" because it contained some habeas claims that had been exhausted in state court and some that had not. *See id.* at 13-17; *Rhines v. Weber*, 544 U.S. 269, 271 (2005); 28 U.S.C. § 2254(b).

Petitioner conceded that he did not exhaust the federal claims in the renumbered Ground Six (Petitioner's "Ground V"), in which he asserted that the OCCA's decision itself violated Petitioner's constitutional rights to due process and equal protection of the law. *See id.* at 14 (citing Pet'r's Reply Br. (Doc. No. 20) at 6-7). Respondent urged the Court to deny the entire Petition on the merits even though Petitioner could still exhaust these federal claims by filing an initial application for postconviction relief in the state district court. *See* Resp't's Ans. at 31-37 (citing 28 U.S.C. § 2254(b)(2), (c); OCCA R. 5.2(C)); Okla. Stat. tit. 22, § 1080; *Moore v. Gibson*, 27 P.3d 483, 487 (Okla. Crim. App. 2001). In his reply brief, Petitioner asked the Court "to dismiss [Ground Six] without

prejudice, or in the alternative for this Court to retain jurisdiction . . . while Petitioner exhausts [the claims] in the Oklahoma Court of Criminal Appeals." Pet'r's Reply Br. at 6-7. The undersigned liberally construed Petitioner's request as a motion to amend the Petition by deleting Ground Six, or, alternatively, to stay these proceedings and hold the Petition in abeyance while Petitioner exhausted the claims in state court. *See* R. & R. at 14-16 (citing *Rhines*, 544 U.S. at 273-78; *Rose v. Lundy*, 455 U.S. 509 (1982); *Fairchild v. Workman*, 579 F.3d 1134 (10th Cir. 2009); 28 U.S.C. § 2254(b)(2)).

Stay and abeyance was—and is—not warranted in this "case because Petitioner [did] not explain why he purportedly 'could not raise' his due process and equal protection claims 'until entering into this Court's jurisdiction.'" *Id.* at 15 (quoting Pet. at 4). Additionally, to the extent Petitioner blamed his failure to exhaust on his lack of legal training, *see* Pet'r's Reply Br. at 3-6, the undersigned concluded that "this argument must fail" because "[n]either Petitioner's pro se status nor his unfamiliarity with Oklahoma's postconviction procedures can establish 'good cause' for failing to first present these claims in state court." R. & R. at 15 (collecting cases). Accordingly, the undersigned recommended that the Court construe Petitioner's request as a motion to amend the Petition by deleting the claims in Ground Six and "grant Petitioner's request to dismiss the Ground Six claims without prejudice." *Id.* at 16.

The undersigned then addressed Petitioner's remaining habeas claims under the applicable standards of review. *See generally id.* at 17-19 (citing 28 U.S.C. § 2254(a), (d)), 19-28 (Ground One), 28-33 (Ground Two), 33-35 (Ground Four), 35-40 (Ground Five), 40-42 (Ground Seven), 42-46 (Ground Three). Ultimately, the undersigned

"recommended that the Petition for Writ of Habeas Corpus (Doc. No. 1) be denied, with the exception of the unexhausted claims raised in Ground Six, which should be dismissed without prejudice." *Id.* at 46. The presiding district judge adopted the undersigned's recommendation in an Order entered on February 29, 2016. Order (Doc. No. 31) at 1; *see also* J. (Doc. No. 32) at 1. The final Order "denie[d] the Petition for Writ of Habeas Corpus, with the exception of the unexhausted claims raised in Ground Six," and "dismisse[d]" Ground Six "without prejudice." Order at 1 (emphasis omitted).

2. The Tenth Circuit's Decision

Petitioner then sought a certificate of appealability on the "five (5) substantive grounds" that this Court had denied under 28 U.S.C. § 2254(d). *See* Appl. for Certificate of Appealability at 9, 11-12, 16-33, *Wood v. McCollum*, No. 16-6067 (10th Cir. filed Apr. 7, 2016). In July 2016, the Tenth Circuit directed the parties "to show cause why th[e] court should not summarily reverse the district court's hybrid dismissal of Wood's § 2254 petition and remand for adoption of a disposition consistent with the rule set out in" *Moore v. Schoeman*, 288 F.3d 1231 (10th Cir. 2002). Show Cause Order at 3, *Wood v. McCollum*, No. 16-6067 (10th Cir. July 7, 2016). On August 16, 2016, the Tenth Circuit issued a decision reversing this Court's "hybrid dismissal of Wood's § 2254 petition" and remanding the case "with instructions to vacate its judgment and dispose of Wood's petition in a manner consistent with *Moore*." *Wood v. McCollum*, 833 F.3d 1272, 1274 (10th Cir. 2016). The panel did not address any other aspect of the Court's final order and judgment. *See id.* at 1273-74.

3. <u>Post-Remand District Court Proceedings</u>

On September 13, 2016, the presiding District Judge vacated the judgment and referred the matter to the undersigned "for further proceedings consistent with the Tenth Circuit's Order." Order of Sept. 13, 2016 (Doc. No. 43) at 1. The next day, the undersigned ordered Petitioner to notify the Court in writing whether he wished "to amend his Petition by deleting the unexhausted claim raised in Ground Six." Order of Sept. 14, 2016 (Doc. No. 44) at 1. Petitioner timely filed a motion asking the Court to "delete" the unexhausted due-process and equal-protection claims from "his first § 2254 habeas petition to overcome the mixed petition issue" identified by the Tenth Circuit.[6] Pet'r's Mot. to Amend (Doc. No. 47) at 3; *see also id.* at 1, 2. Respondent does not oppose Petitioner's request to amend his Petition by deleting these unexhausted claims. *See* Resp't's Resp. to Pet'r's Mots. (Doc. No. 49) at 5.

In *Wood*, the Tenth Circuit explicitly recognized that a federal district court has four options when confronted with a mixed § 2254 petition. *See Wood*, 833 F.3d at 1273. First, the court may "'dismiss the entire petition without prejudice in order to permit exhaustion of state remedies.'" *Id.* (quoting *Moore*, 288 F.3d at 1235); *accord Rose*, 455 U.S. at 510. Second, the court may "'deny the entire petition on the merits.'" *Wood*, 833 F.3d at 1273 (quoting *Moore*, 288 F.3d at 1235); *accord* 28 U.S.C. § 2254(b)(2). Third, the court may "permit the petitioner to delete the unexhausted claim from his petition and proceed only on the exhausted claims." *Wood*, 833 F.3d at 1273 (citing *Rose*, 455 U.S. at

---

[6] Petitioner refers to these claims as "Ground V," which is how they originally appeared in his pro se pleadings. Pet'r's Mot. to Amend at 1-3; *see* Pet'r's Br. in Supp. at 14.

510).  Finally, "if the equities favor such an approach," the court "may stay the federal habeas [action] and hold [the petition] in abeyance while the petitioner returns to state court to exhaust the previously unexhausted claims." *Id.* at 1274 (citing *Rhines*, 544 U.S. at 279).

Where, as here, "a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is *inappropriate*, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines*, 544 U.S. at 278 (emphasis added) (citing *Rose*, 455 U.S. at 520); *accord Jones v. Bock*, 549 U.S. 199, 222 (2007) ("[T]he habeas total exhaustion rule . . . does not in fact depart from the usual practice—as we recently held, a court presented with a mixed habeas petition 'should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims . . . .'" (quoting *Rhines*, 544 U.S. at 278)).  The district court does not need to dismiss the entire petition before granting leave to amend.  *Rhines*, 544 U.S. at 278; *see also* 28 U.S.C. § 2242; Fed. R. Civ. P. 15(a)(2), 81(a)(4); R. 12, R. Governing § 2254 Cases in U.S. Dist. Cts.; *cf. Mayle v. Felix*, 545 U.S. 644, 649, 654-55 (2005) (discussing Rule 15(a) amendments to § 2254 petitions); *Fairchild*, 579 F.3d at 1156 ("If the district court determines that use of the stay-and-abeyance procedure is not warranted in this case, then the court may simply allow Mr. Fairchild to 'dismiss and abandon his unexhausted claim and then reenter the very judgment that is now before us.'" (alteration omitted) (quoting *Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000))).

"The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)[(4)], and Habeas Corpus Rule [12], allows pleading amendments with leave of court any time during a proceeding." *Felix*, 545 U.S. at 655 (internal quotation marks omitted) (citing Fed. R. Civ. P. 15(a)(2)). "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), such as where dismissing "the entire petition would unreasonably impair the petitioner's right to obtain federal relief," *Rhines*, 554 U.S. at 278. *See, e.g.*, *Hall v. Allbaugh*, No. CIV-15-203-M, 2016 WL 1305945, at *6 (W.D. Okla. Feb. 18, 2016) (R. & R.) (recommending that the district judge grant petitioner's request to delete his unexhausted claims where the applicable one-year limitations period for filing a § 2254 petition had expired), *adopted*, 2016 WL 1268309 (W.D. Okla. Mar. 31, 2016). In this case, dismissing the entire Petition, against Petitioner's specific request to abandon only these two unexhausted claims, would unreasonably impair Petitioner's right to file a new § 2254 petition because the applicable one-year limitations period expired after Petitioner filed his original pleading. *See Rhines*, 544 U.S. at 274, 278; *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that the one-year limitations period in 28 U.S.C. § 2244(d)(1) is not tolled while a § 2254 petition is pending in federal court); *Hall*, 2016 WL 1305945, at *6 (citing *Rhines*, 544 U.S. at 278); Pet. at 1 (Petitioner's original § 2254 petition filed on June 17, 2013).

Accordingly, the undersigned recommends that the Court grant Petitioner's unopposed motion to amend (Doc. No. 47) and deem the Petition (Doc. No. 1) amended as indicated in that motion. *See Rhines*, 544 U.S. at 278; *Fairchild*, 579 F.3d at 1156;

*Hall*, 2016 WL 1268309, at *1 (granting petitioner's request to delete his unexhausted claims and ordering a response on the remaining claims). Specifically, the unexhausted claims listed herein as Petitioner's Ground Six—i.e., that the OCCA's decision itself "denied Petitioner due process and equal protection of the law," Pet. at 4—should be deemed deleted from the Petition. *See* Pet'r's Mot. to Amend at 1, 3.

4. Petitioner's Amended Petition

As drafted, Petitioner's amended Petition and pro se brief in support generally track the arguments that his court-appointed counsel made in Petitioner's brief on direct appeal to the OCCA. *Compare* Pet'r's Br. in Supp. at 15-64, *with* Pet'r's OCCA Br. at 25-49; *see also* Pet'r's Mot. to Amend at 2. The undersigned has considered the counseled OCCA brief together with the amended Petition and has "looked carefully at the facts and the pleadings in an effort to ascertain . . . the true nature of Petitioner's claims" and to "do substantial justice" in liberally construing Petitioner's pro se filings. *Barnett*, 174 F.3d at 1133.

> [T]he mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so despite the petitioner's failure to cite proper legal authority, his confusion of various legal theories, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). At the same time, a district court should not "assume the role of advocate for the pro se litigant," *id.*, and may "not rewrite a petition to include claims that were never presented," *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998).

*Barnett*, 174 F.3d at 1133 (alterations omitted); *see also* R. 2(c), R. Governing § 2254 Cases in U.S. Dist. Cts. (instructing that the "petition must[] specify all grounds for relief available to the petitioner" and "state the facts supporting each ground").

With these principles in mind, the undersigned concludes that Petitioner's pro se pleadings contain well-pled factual allegations—accepted as true for purposes of deciphering the "true nature of Petitioner's claims" presented in the amended Petition—that support the following grounds for federal habeas relief. *Barnett*, 174 F.3d at 1133.

Ground One: "Petitioner was denied due process when the trial court failed to establish" that Petitioner was competent, resulting in the acceptance of a guilty "plea that was not voluntary, knowing and intelligent." Pet. at 3; Pet'r's Br. in Supp. at 29-31, 33, 39; *see also* Pet'r's OCCA Br. at 25-27.

Petitioner's guilty plea was involuntary because, at the time he entered the plea, Petitioner was psychiatric taking medication (Celexa) that "changed his personality by making him not care about his surroundings or what was happening to him[]." Pet'r's in Supp. at 31; *see also* Pet'r's OCCA Br. at 28-30.

Ground Two: Petitioner's guilty "plea was not knowing and voluntary because it was entered as a result of inadvertence, ignorance, misunderstanding, or misapprehension" concerning Petitioner's potential term of imprisonment. Pet'r's Br. in Supp. at 40-42; *see also* Pet'r's OCCA Br. at 31-34.

Ground Three: The trial court did not establish that Petitioner's plea of guilty to first-degree murder was supported by "an adequate factual basis." Pet'r's Br. in Supp. at 45-50; *see also* Pet'r's OCCA Br. at 35-39.

Ground Four: Mr. Box's failure to investigate Petitioner's "mental state and the medications he was taking when he entered his plea" violated Petitioner's right to effective assistance of counsel. Pet'r's Br. in Supp. at 50-51, 53-55, 60; *see also* Pet'r's OCCA Br. at 39-48.

Mr. Allsup's failure to call certain witnesses or to conduct certain investigations, as well as Mr. Allsup's exclusive reliance on Petitioner's hearing testimony to support Petitioner's motions to withdraw his guilty plea, violated Petitioner's right to effective assistance of counsel. Pet'r's Br. in Supp. at 50-51, 55-56, 60; *see also* Pet'r's OCCA Br. at 39-48.

Ground Five:    The errors in Petitioner's case cumulatively deprived him of a fair hearing and due process of law.  Pet'r's Br. in Supp. at 64; *see also* Pet'r's OCCA Br. at 48.

Ground Six:     Deleted.

Ground Seven:   Petitioner's guilty plea was involuntary as a result of ineffective assistance of counsel because his attorney, Mr. Box, "affirmative[ly] misrepresent[ed]" the "sentence Petitioner would receive" if he pled guilty under the terms of the proposed plea agreement.  Pet'r's Br. in Supp. at 42.

Ground One through Ground Five correspond to the "five grounds for relief" that Petitioner presented on direct appeal to the OCCA.  Pet'r's Mot. to Amend at 3.

A new Ground Seven is included separately because, although Petitioner does not use the phrase "ineffective assistance of counsel" to describe Mr. Box's erroneous and misleading sentencing advice, factual allegations similar to Petitioner's have been held to implicate such a claim under *Hill v. Lockhart*, 474 U.S. 52 (1985).  *See, e.g.*, *United States v. Silva*, 430 F.3d 1096, 1099-1100 (10th Cir. 2005) (applying *Hill* to pro se petitioner's allegation that his guilty "plea was not knowing and voluntary because it was the product of an erroneous and coercive sentencing misrepresentation" by his attorney); *Osborn v. Shillinger*, 997 F.2d 1324, 1328 & n.1 (10th Cir. 1993) (applying *Hill* to pro se petitioner's allegation that his attorney's errors "coerced him to plead guilty" even though petitioner's pleading did "not directly state a claim of ineffective assistance of counsel").

Petitioner asserts that his guilty plea was "not knowing and voluntary" in part because Mr. Box "affirmative[ly] misrepresent[ed]" the prison sentence that Petitioner "would receive" if he pled guilty under the terms of the proposed plea agreement.  Pet'r's

Br. in Supp. at 40, 42; *accord* Pet'r's OCCA Br. at 31-34. More specifically, Petitioner alleges:

> Mr. Box told Petitioner that even though he was facing a life sentence, it did not necessarily mean that he would have to spend the rest of his life in prison. . . . Mr. Box told him that the sentence could be split where Petitioner would serve "20 [years] in or 25 [years] in, 20 [years] out."

Pet'r's Br. in Supp. at 42 (quoting Mot. Hr'g Tr. 28); *accord* Pet'r's OCCA Br. at 26. Petitioner also alleges that Mr. Box's explanation of the plea's direct consequences "affirmatively misled" Petitioner into pleading guilty even though Petitioner had "remained steadfast in exercising his right to take his case to trial." Pet'r's Br. in Supp. at 41-42; *accord* Pet'r's OCCA Br. at 26. Petitioner makes these allegations as part of his assertion in Ground Two that his "[un]knowing and [in]voluntary" guilty plea was "obtained in violation of due process and is therefore void." *See* Pet'r's Br. in Supp. at 40-42 (citing *Boykin v. Alabama*, 395 U.S. 238 (1969); *Brady v. United States*, 397 U.S. 742 (1970)); *accord* Pet'r's OCCA Br. at 31-34 (same).

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (internal quotation marks omitted) (collecting cases). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The *Hill* Court's specific concern "with the quality of counsel's performance in

advising a defendant whether to plead guilty stemmed from the more general principle," *id.* at 57, that "a defendant is entitled to 'the effective assistance of competent counsel'" when making this decision, *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann*, 397 U.S. at 771; *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Consistent with that concern, the Supreme Court has "rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel" if the attorney's errors violate the defendant's Sixth Amendment right to effective assistance of counsel. *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012) (citing *Padilla*, 559 U.S. 356); *cf. Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) ("An inquiry into whether the rejection of a plea [agreement] is knowing and voluntary . . . is not the correct means by which to address a claim of ineffective assistance of counsel." (citing *Hill*, 474 U.S. at 57-59; *Strickland*, 466 U.S. 668; 28 U.S.C. § 2254(d)(1))).

"When an involuntariness claim rests on the faulty legal decision or predictions of counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988) (citing *Hill*, 474 U.S. at 57-59), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991); *accord Hill*, 474 U.S. at 56-57 ("[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." (internal quotation marks omitted)). That, in turn, requires the petitioner to demonstrate that plea counsel's erroneous advice was objectively unreasonable and that there is a reasonable probability

that, but for counsel's error, petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (citing *Strickland*, 466 U.S. 688). Here, Petitioner specifically alleges that his guilty plea was "involuntary" because Mr. Box "misrepresent[ed]" the prison sentence that Petitioner "would receive" if he pled guilty under the terms of the proposed agreement, and that Mr. Box's erroneous advice "affirmatively misled" Petitioner into pleading guilty even though he had "remained steadfast in exercising his right to take his case to trial." Pet'r's Br. in Supp. at 41-42; *cf. Hill*, 474 U.S. at 56 ("[P]etitioner relies entirely on the claim that his plea was 'involuntary' as a result of ineffective assistance of counsel because his attorney supplied him with information about parole eligibility that was erroneous."). While the Petition "does not directly state a claim of ineffective assistance of counsel" based on Mr. Box's advice, *Osborn*, 997 F.2d at 1328 n.1, Petitioner's well-pled factual allegations nonetheless suggest a *Hill* claim that, if proven, could entitle him to a writ of habeas corpus under 28 U.S.C. § 2254(a). *Cf. Machibroda v. United States*, 368 U.S. 487, 494-96 (1962) (holding that the district court could not summarily dismiss prisoner's claim that his guilty plea was involuntary where the prisoner alleged facts that, "while improbable," would if true entitle him to relief under 28 U.S.C. § 2255); *Beavers v. Saffle*, 216 F.3d 918, 925 (10th Cir. 2000) (petitioner's allegations that his attorney's advice "misrepresent[ed] the date of parole eligibility by several years" and that petitioner "would not have waived [his] rights to a jury trial and entered a plea of guilty" if he had correct information, would if true entitle petitioner to relief under 28 U.S.C. § 2254). In accordance with the above authorities, the undersigned has liberally

construed the amended Petition to assert a *Hill* claim (Ground Seven) in addition to Petitioner's five enumerated grounds for relief.

## ANALYSIS

Section 2254 of Title 28 of the United States Code authorizes federal courts to entertain petitions for a writ of habeas corpus on behalf of a convicted person claiming the right to be released from state custody "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs the federal courts' review of such petitions and "sets several limits on" their power to grant habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). *See generally* 28 U.S.C. § 2254(b)-(e). At issue here are the procedural prerequisite of exhaustion in § 2254(b), the substantive prerequisites of § 2254(d), and the merits of Petitioner's new *Hill* claim.

### A.   *Section 2254(b) – Exhaustion*

A federal court cannot grant a state prisoner's habeas petition unless the petition satisfies the procedural prerequisites of § 2254(b), including that the petitioner exhausted his or her state-court remedies by presenting "the substance" of the § 2254 petition's claims to the state's highest court. *Pinholster*, 563 U.S. at 181 (citing 28 U.S.C. § 2254(b), (c)); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (explaining that "the substance" of a habeas claim consists of both the necessary facts and explicit "reference to a specific federal constitutional guarantee"); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust, a

habeas petitioner "must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim" and giving the State the first "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted). The petitioner bears the burden of proving proper exhaustion. *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011).

Petitioner did not properly exhaust his *Hill* claim that his guilty plea was "involuntary" because it relied upon counsel's erroneous and misleading sentencing advice. *Cf.* Pet'r's Obj. to R. & R. (Doc. No. 27) at 4, 6-7, 16-17 (suggesting for the first time that Petitioner intended to include a *Hill* claim in his original § 2254 petition and that his appellate counsel's failure to raise such a claim on direct appeal should be excused under the cause-and-prejudice standard). To "fairly present" this claim to the OCCA, Petitioner had to raise the claim's legal *and* factual substance—i.e., make explicit "reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief" under *Hill*—which he did not do.[7] *See Gray*, 518 U.S.

---

[7] Although "[t]he petitioner need not cite 'book and verse on the federal constitution,'" his state-court filings must do "more than present[] 'all the facts necessary to support the federal claim.'" *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1986)). While Petitioner's Proposition Two to the OCCA presented all of the facts necessary to state a *Hill* claim on direct appeal, the Sixth Amendment claim "inherent in those facts"—i.e., that Petitioner's guilty plea was involuntary *as a result of* ineffective assistance of counsel—"was never brought to the attention of the state courts." *Picard v. Connor*, 404 U.S. 270, 277 (1971); *see Hill*, 474 U.S. at 56; Pet'r's OCCA Br. at 31-34; Pet'r's Obj. to R. & R. at 4, 6-7, 16-17. On the contrary, appellate counsel's arguments suggest that she and Petitioner chose not to argue in Proposition Two that Mr. Box's plea advice amounted to ineffective assistance of counsel, and to instead focus on whether Petitioner actually understood the consequences

at 162-63. That said, because the *Hill* claim was not expressly raised in the original § 2254 Petition, Respondent did not address it and, specifically, whether such a claim would be procedurally barred under Oklahoma law if Petitioner now attempted to present the claim in state court. *See generally* Resp't's Ans. at 2, 15-21; *Spears v. Mullin*, 343 F.3d 1215, 1234 (10th Cir. 2003) (recognizing that the State bears the burden of asserting procedural default). Rather than directing a further response from Respondent on this issue, the undersigned analyzes the *Hill* claim on the merits in Subsection C, below. *See Wood*, 833 F.3d at 1273; 28 U.S.C. § 2254(b)(2).

B.      Section 2254(d)

The standard under which this Court must review Petitioner's properly exhausted grounds for relief depends on whether the OCCA adjudicated the relevant claims on the merits. *Cole v. Trammell*, 755 F.3d 1142, 1148 (10th Cir. 2014). "When a federal claim has been presented to a state court and the state court has denied relief" the federal habeas court must "presume[] that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088,

---

of pleading guilty. *Compare* Pet'r's OCCA Br. at 31-37 (Proposition Two) (citing *Brady*, 397 U.S. at 755; *Boykin*, 395 U.S. at 243), *with id.* at 39-48 (Proposition Four) (citing *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 688, 694). Petitioner does not allege that appellate counsel made any errors while representing him on direct appeal to the OCCA. *See generally* Pet'r's Br. in Supp. at 29-64; Pet'r's Reply Br. at 1-6. *But see* Pet'r's Obj. to R. & R. at 6-8 (suggesting for the first time, after the undersigned expressly noted the omission from the original pleadings, that counsel's failure to raise a *Hill* claim on direct appeal constituted ineffective assistance of counsel).

1094-95 (2013); *Harris v. Reed*, 489 U.S. 255, 264-65 & n.12 (1989). Either party may rebut this presumption. *Johnson*, 133 S. Ct. at 1096.

With the exception of Petitioner's Ground Seven *Hill* claim, Respondent asserts, and Petitioner implicitly concedes, that the OCCA adjudicated each of Petitioner's habeas claims on the merits in denying his petition for writ of certiorari. Resp't's Ans. at 3; *see* Pet'r's Reply Br. at 6. Accordingly, this Court cannot grant relief unless Petitioner first shows that the OCCA's adjudication of at least one of those claims resulted in a decision that was

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013). Review under § 2254(d) is limited to "the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181 (discussing review under § 2254(d)(1)); *accord Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (discussing review under § 2254(d)(2)).

Generally, "[a] decision is contrary to clearly established law if the state court applies a rule that contradicts the governing law" set forth in the holdings of then-existing Supreme Court decisions. *Lafler*, 132 S. Ct. at 1390 (internal quotation marks omitted); *accord Carey v. Musladin*, 549 U.S. 70, 75 (2006) ("[C]learly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." (internal quotation marks omitted)). A

decision "involves an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (citing 28 U.S.C. § 2254(d)(1)).

Section 2254(d) establishes a "'highly deferential standard' . . . that 'demands that state-court decisions be given the benefit of the doubt.'" *Dodd*, 753 F.3d at 982 (quoting *Pinholster*, 563 U.S. at 181). Indeed, it is not enough for a petitioner to persuade a federal court that the state court's judgment rests upon a violation of federal law or clearly erroneous factual findings. *See White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (legal errors); *Wood v. Allen*, 558 U.S. 290, 301 (2010) (factual errors). Rather, the petitioner must demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (discussing § 2254(d)(1)); *cf. Allen*, 558 U.S. at 301 (discussing § 2254(d)(2)). This is true even where the state court offers no justification for its apparent conclusion that a federal claim lacks merit. *See Richter*, 562 U.S. at 98-99, 102-03; *Williams v. Trammell*, 782 F.3d 1184, 1199-1200 (10th Cir. 2015).

1.   The OCCA's Rejection of Petitioner's *Boykin* Claim

Petitioner asserts in Ground One that he "was denied due process when the trial court failed to establish Petitioner was competent before accepting his plea, resulting in a plea that was not voluntary, knowing, and intelligent." Pet'r's Br. in Supp. at 29. "A plea of guilty is more than an admission of conduct; it is a conviction" entered against the

accused without many of the federal constitutional guarantees that accompany a fundamentally fair trial. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002); *Brady v. United States*, 397 U.S. 742, 748 (1970). "Thus, the defendant must be competent to enter the plea and the plea must be knowing and voluntary." *Gonzales v. Tafoya*, 515 F.3d 1097, 1118 (10th Cir. 2008); *see also Godinez v. Moran*, 509 U.S. 389, 400-01 & n.12 (1993) (explaining the distinction between the "competency" inquiry and the "knowing and voluntary" inquiry). To be competent, the defendant must be able "to consult with his lawyer with a reasonable degree of understanding" and have a "rational" and "factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396 (internal quotation marks omitted). Federal courts will uphold a guilty plea against a due-process challenge if the "circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996) (citing *Brady*, 397 U.S. 742; *Boykin*, 395 U.S. at 242-44). But if a defendant is incompetent, or if his or her guilty plea is not "equally voluntary and knowing," then the conviction "has been obtained in violation of due process and is therefore void." *Boykin*, 395 U.S. at 243 n.5; *accord Godinez*, 509 U.S. at 396, 400-01.

*Boykin* clearly establishes that the state-court record must affirmatively "disclose" that the defendant made an informed choice to admit guilt and to forgo the constitutional guarantees associated with a fair trial—reviewing courts "cannot presume a waiver of these important federal rights from a *silent* record." *Boykin*, 395 U.S. at 243 (emphasis

added); *accord Brady*, 397 U.S. at 747 n.4 ("The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily."). However, neither *Boykin* nor any other Supreme Court decision clearly establishes *how* state-court judges must make this determination. *See Godinez*, 509 U.S. at 401 n.13; *Boykin*, 395 U.S. at 243-44; *McCarthy v. United States*, 394 U.S. 459, 465 (1969) (noting that the plea colloquy outlined in Rule 11 of the Federal Rules of Criminal Procedure, which exists to help federal district judges make "the constitutionally required determination that a defendant's guilty plea is truly voluntary," has not itself "been held to be constitutionally mandated"); *cf. Iowa v. Tovar*, 541 U.S. 77, 88, 92 (2004) (explaining that the Supreme Court has never "prescribed any formula or script to be read to a defendant who states that he elects" to waive the Sixth Amendment right to counsel and that the "information a defendant must possess in order to make an intelligent election" depends "upon the particular facts and circumstances surrounding that [defendant's] case" (internal quotation marks omitted)).

Petitioner first objects that the trial court did not "determine" whether Petitioner was competent to enter a valid guilty plea even though the presiding judge "was on notice that [Petitioner] had at some point in time been treated for a mental illness." *See* Pet'r's Br. in Supp. at 29, 30-31, 39. As on direct appeal, Petitioner challenges as perfunctory and inadequate the judge's plea colloquy, *see* Plea Hr'g Tr. 2-4, and purported failure to "examine, evaluate, and memorialize on the record" whether Petitioner was competent before accepting his guilty plea. *See generally* Pet'r's Br. in Supp. at 29-31, 33, 39;

Pet'r's OCCA Br. at 25-30 (citing *Boykin*, 395 U.S. at 243). Although Respondent addresses the competency issue at some length, *see* Resp't's Ans. at 7-14, neither Petitioner nor his appellate counsel discretely argued that Petitioner actually lacked "the capacity to understand the proceedings and to assist counsel," *Godinez*, 509 U.S. at 401, when he appeared at the change-of-plea hearing on July 22, 2010.[8] *See generally* Pet'r's OCCA Br. at 25-30 (citing *Boykin*, 395 U.S. at 243); Mot. Hr'g Tr. 11-12.[9] Nor does Petitioner raise a lack-of-competency argument in his amended Petition, instead focusing upon the state courts' purported shortcomings in fulfilling *Boykin*'s requirement to "memorialize on the record" Petitioner's mental capacity to enter a valid guilty plea. *See* Pet'r's Br. in Supp. at 29-31, 33, 39; Pet'r's Obj. to R. & R. at 18 (asserting for the first time, after the undersigned expressly noted the omission from the original pleadings, that

---

[8] "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has *the ability* to understand the proceedings. The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant *actually does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez*, 509 U.S. at 401 n.12 (internal citations omitted). The distinction is a subtle one but matters for purposes of determining whether the OCCA's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, the clearly established federal law governing these separate due-process requirements. *Cf. id.* at 400-01 ("In addition to determining that a defendant who seeks to plead guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary.").

[9] For example, Petitioner testified at his motion-to-withdraw hearing that Celexa made him more amenable to the proposed plea agreement because he did not "care so much about" what happened to him while he was taking the medication. Mot. Hr'g Tr. 11. But when Petitioner's counsel asked whether Celexa "affected your *ability to comprehend* that agreement," Petitioner did not directly answer his attorney's question. *See id.* at 12 (emphasis added). Rather, Petitioner responded that he was "coerced into agreeing" to the plea deal because he "had been incarcerated for about two years without bond," he saw "no way of leaving jail," and he "didn't want to die." *Id.*

Petitioner "was incapable of understanding the consequences" of entering a guilty plea under the terms of the proposed agreement).

The OCCA acknowledged that the trial "judge accepted Wood's guilty plea without inquiring on the record about the questions on the [Guilty Plea Form] dealing with competency and Wood's mental state." OCCA Op. Den. Cert. at 3. In denying relief on this aspect of Petitioner's claim, however, the OCCA found that the trial judge reviewed Petitioner's sworn answers to those questions and addressed Petitioner in open court, where the judge "was able to observe" that Petitioner "responded appropriately to all questions." *Id.* Petitioner stated under oath that he was not "taking any medications or substances which affect[ed]" his "ability to understand the[] proceedings" and that he understood the constitutional rights he was giving up by pleading guilty, as well as the "two possible punishments" he faced if the trial court accepted his guilty plea under the terms of this proposed agreement. Plea Hr'g Tr. 2-4; Guilty Plea Form at 1-5; *see also* OCCA Op. Den. Cert. at 3, 5. The trial judge then found on the record that Petitioner was "competent for the purpose of [the plea] hearing" and that Petitioner "freely, knowingly, and with aid of counsel" entered his plea of guilty to first-degree murder as charged in the Information. Plea Hr'g Tr. 4; Guilty Plea Form at 6. Clearly established federal law required nothing more. *See Godinez*, 509 U.S. at 401 & n.13; *Brady*, 397 U.S. at 747 n.4; *Boykin*, 395 U.S. at 243-44. Petitioner does not argue that the state courts' underlying factual findings are objectively unreasonably or incorrect. 28 U.S.C. § 2254(d)(2), (e)(1). Accordingly, he is not entitled to relief on this aspect of Ground One. 28 U.S.C. § 2254(d).

Petitioner also asserts in Ground One that his guilty plea was not "voluntary, knowing, and intelligent" because he was taking medication (Celexa) that "changed his personality by making him not care about his surroundings or what was happening to him[]." Pet'r's Br. in Supp. at 31. The OCCA rejected Petitioner's claim because it determined that "the trial court's ruling that Wood entered a knowing and voluntary plea [was] supported by the record" on appeal, including Petitioner's testimony both at the change-of-plea hearing and at the hearing on his motions to withdraw his guilty plea. *See* OCCA Op. Den. Cert. at 3, 5-6.

"Whether a guilty plea is knowing and voluntary under the constitution is a question of federal law," "but this legal conclusion rests on factual findings and inferences from those findings." *Osborn*, 997 F.2d at 1327; *Fields v. Gibson*, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing *Parke v. Raley*, 506 U.S. 20, 35 (1992)). A conviction entered on a guilty plea "comport[s] with due process" so long as "circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *See Cunningham*, 92 F.3d at 1060 (citing *Brady*, 397 U.S. 742; *Boykin*, 395 U.S. at 242-44). Although a defendant's mental illness is "relevant to the general inquiry, it does not in itself establish that the plea violated a defendant's due process rights." *See Gonzales*, 515 F.3d at 1118. Rather, mental illness and psychiatric treatment are factors that courts must consider in determining whether the defendant made a "deliberate, intelligent choice" to plead guilty with a sufficient "understanding of what the plea connotes" and of its likely consequences. *Id.* (internal quotation marks omitted); *accord Brady*, 397 U.S. at 749

("The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it.").

The OCCA identified the correct governing legal principle in concluding that Petitioner's guilty plea must be "knowing and voluntary" in order to sustain his conviction. *See* OCCA Op. Den. Cert. at 2 ("[T]he trial court may accept the plea provided the court is satisfied that the defendant understands the consequences of entering a plea and that the plea is knowing and voluntary."). Thus, the OCCA's decision to deny relief on this aspect of Petitioner's claim "precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). Evaluating whether a state court's application of a rule was objectively reasonable "requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). The "knowing, intelligent, and voluntary" standard is a general and fact-dependent one, *see Ruiz*, 536 U.S. at 629; *Miles v. Dorsey*, 61 F.3d 1459, 1465 (10th Cir. 1995), so the OCCA had wide "latitude to reasonably determine" that Petitioner failed to rebut the trial court's rulings in this case. *Cf. Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). This Court also must presume that the state courts' factual findings, including any implicit determinations regarding witness credibility and the weight assigned to conflicting evidence, are correct absent a rebuttal of that presumption. *See Hoffman v. Young*, 23 F. App'x 885, 887-88

(10th Cir. 2001); *Smith v. Gibson*, 197 F.3d 454, 459 (1999) (citing *Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983)); 28 U.S.C. § 2254(e)(1).

At the hearing on the motions to withdraw his guilty plea, Petitioner initially testified that Celexa made him more amenable to the State's plea offer because he did not "care so much about" what happened to him while he was taking the medication. *See* Mot. Hr'g Tr. 11-12. However, the OCCA found that Petitioner's "other testimony" about the relevant circumstances "refuted his claim that his medication influenced his decision to enter a plea." OCCA Op. Den. Cert. at 4. Significantly, Petitioner

> testified that he did not agree with the attorney appointed from [OIDS] . . . because that attorney strongly urged him to accept the prosecution's plea offer. Wood conceded that he was presented with the same plea offer by both his appointed counsel and his retained counsel and that he firmly rejected it when it was presented by his appointed counsel. He was on the same medication that supposedly made him more agreeable when he rejected the offer the first time when it was presented by appointed counsel. It appears from Wood's testimony that it was not the medication that motivated him to accept the prosecution's plea offer, but the prosecution's willingness to dismiss the Bill of Particulars. Wood agreed that a contributing factor to his depression was the possibility of receiving the death sentence, and, further, that the plea agreement dismissed the Bill of Particulars. Wood said he "just had to do it to escape the death penalty." He said he understood the terms of the plea agreement and that "the death penalty was being taken away." He said that he accepted the same offer when presented by his retained counsel "as a last chance."

OCCA Op. Den. Cert. at 4-5; *see* Mot. Hr'g Tr. 13-16, 21-27, 28-29, 30-31.

The trial court judge also concluded that Petitioner "failed to present sufficient evidence for the Court to grant his request" to withdraw the guilty plea, which that court determined to be "free and voluntary" and otherwise "entered validly" by Petitioner. *See* Mot. Hr'g Tr. 45. In making this determination, the judge cited evidence that Petitioner

"did not rush into the plea" and was represented by two "very experienced attorneys" who recommended that Petitioner accept the State's plea offer to avoid a substantial risk that Petitioner would be sentenced to death if he went to trial. *See id.* at 43-45. The judge also implicitly rejected Petitioner's hearing testimony to the extent that it conflicted with Petitioner's sworn statements on the Guilty Plea Form and his testimony during the change-of-plea hearing. *See id.*

Petitioner does not challenge the state courts' findings of historical fact concerning pretrial events or the change-of-plea hearing. *See* Pet'r's Br. in Supp. at 39; Pet'r's Reply Br. at 3-6; 28 U.S.C. § 2254(d)(2), (e)(1). Instead, he asserts only that OCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law requiring "that a guilty plea must be voluntary, knowing, and intelligently made." *See* Pet'r's Reply Br. at 3-6; 28 U.S.C. § 2254(d)(1).

The undersigned disagrees. The OCCA identified the correct governing legal principles, and it reasonably applied those principles in concluding that the evidence before it on appeal—including Petitioner's own testimony—adequately supported the trial judge's conclusion that Petitioner made a "deliberate, intelligent choice," *Gonzales*, 515 F.3d at 1120, "to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty," *Brady*, 397 U.S. at 749. *See Hoffman*, 23 F. App'x at 887-88 (denying relief under § 2254(d) where, "though the evidence conflict[ed]," the state court's conclusion that petitioner's guilty plea was knowing and voluntary was "supported by record evidence," including petitioner's sworn statements); *Freisinger v. Keith*, No. CIV-09-836-C, 2011 WL 4526761, at *3-5 (W.D.

Okla. July 28, 2011) (R. & R.) (finding that the state courts reasonably rejected petitioner's claim that medication rendered his guilty plea unknowing and involuntary where petitioner previously stated under oath that "he understood the nature and consequences of the proceedings" and that "he was not taking any medication or substance which would affect his ability to understand the proceedings"), *adopted*, 2011 WL 4502298 (W.D. Okla. Sept. 28, 2011), *and appeal dismissed*, 473 F. App'x 846 (10th Cir. 2012). Accordingly, Petitioner is not entitled to relief on Ground One. *See* 28 U.S.C. § 2254(d).

### 2. The OCCA's Rejection of Petitioner's *Brady* Claim

Petitioner asserts in Ground Two that his conviction was "obtained in violation of due process" because he was not "fully aware of the [guilty plea's] direct consequences, including the actual value of any commitments made to him by . . . his own counsel." Pet'r's Br. in Supp. at 40, 42 (citing *Boykin*, 395 U.S. at 243; *Brady*, 397 U.S. at 755). This Ground reasserts the *Brady* claim that Petitioner presented to the OCCA on direct appeal. There, Petitioner argued that his conviction was "obtained in violation of due process" because, in light of Mr. Box's "affirmative misrepresentations . . . regarding what sentence [Petitioner] would receive" if he pled guilty, Petitioner was not "fully aware of the [plea's] direct consequences, including the actual value of any commitments made to him by . . . his own counsel." Pet'r's OCCA Br. at 32-34 (citing *Brady*, 397 U.S. at 755; *Boykin*, 395 U.S. at 243).

The OCCA reviewed Petitioner's claim under Oklahoma's plain-error standard because Petitioner did not raise this argument at the hearing on the motions to withdraw

his guilty plea, where he was represented by OIDS attorney Blayne Allsup.  *See* OCCA

Op. Den. Cert. at 6; Mot. Hr'g Tr. 2; *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist.

Ct.) (docket entries of May 25 and 26, 2011).  The OCCA noted Petitioner's testimony to

the effect that Mr. Box told Petitioner "that a life sentence 'could mean a split sentence of

20 [years] in or 25 [years] in, 20 [years] out.'"  OCCA Op. Den. Cert. at 6 (quoting Mot.

Hr'g Tr. 28).  However, Petitioner also

> admitted that the trial court judge correctly advised him at the plea hearing
> that the range of punishment was life with the possibility of parole and life
> without the possibility of parole and that a sentence of life with the
> possibility of parole required the service of 85% of a life sentence
> calculated as 45 years before Wood would be eligible for parole.  Wood
> conceded that he did not ask his attorney about any possible
> misunderstanding about the meaning of a life sentence after the plea
> colloquy.  Wood also acknowledged that the plea agreement provided that
> he would receive a sentence of life with the possibility of parole on the
> condition that information he provided led to the recovery of the victim's
> body[,] and a sentence of life without the possibility of parole if it did not.
> The body was never recovered and Wood was sentenced to life without the
> possibility of parole.  Wood never claimed that he was expecting any type
> of split sentence or that his plea was based on any representation by
> retained counsel that he would receive a split sentence.

*Id.* at 6-7 (footnote omitted); *see generally* Mot. Hr'g Tr. 6-31.  Based on this evidence,

the OCCA concluded that Petitioner's "testimony about a split sentence is not credible

and he has not shown that he is entitled to relief under the plain error doctrine."  OCCA

Op. Den. Cert. at 7 (citing *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006)).

To satisfy Oklahoma's plain-error standard, Petitioner had to establish the

existence of a "plain or obvious" deviation from a legal rule (i.e., error) that "affected the

outcome of the proceeding."  *Hogan*, 139 P.3d at 923.  Even then, however, the OCCA

will "correct plain error only if the error seriously affect[ed] the fairness, integrity or

public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." *Id.* (internal quotation marks omitted). In Petitioner's case, the OCCA's failure to find plain error amounted to a conclusion that Mr. Box's erroneous sentencing advice, if such a statement was made at all, did not affect the outcome of Petitioner's plea proceedings. *See* OCCA Op. Den. Cert. at 7 ("Wood's testimony about a split sentence is not credible."), 12 ("There are no errors, either individually or when considered in a cumulative fashion, that merit relief in this case.").

Because the OCCA's rejection of the claim that Petitioner's guilty plea was "obtained in violation of due process," *Boykin*, 395 U.S. at 243 n.5, was an adjudication on the merits of that federal claim, this Court must defer to the OCCA's decision unless it was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d); *Douglas v. Workman*, 560 F.3d 1156, 1178-79 (10th Cir. 2009) ("[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent that the state court finds the claim lacks merit under federal law."). Petitioner again asserts that the OCCA's rejection of this claim resulted in a decision that is both "contrary to" and an "unreasonable application of" clearly established federal law requiring "that a plea must be voluntary, knowing, and intelligently made." Pet'r's Reply Br. at 3. He does not challenge the state courts' underlying factual findings. 28 U.S.C. § 2254(d)(2), (e)(1).

*Brady* and *Boykin* clearly establish that a guilty plea must be intelligently made and is not so if a defendant is not accurately informed about the "direct consequences" of

the plea. *See Brady*, 397 U.S. at 748, 755; *Boykin*, 395 U.S. at 242-44. Generally, this means that the defendant must be aware of the mandatory minimum and potential maximum penalties prescribed by statute. *See Crump v. Wilkinson*, 520 F. App'x 775, 779 (10th Cir. 2013) (citing *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005)); *Clark v. Mullins*, 179 F. App'x 551, 555 (10th Cir. 2006) (citing *Boykin*, 395 U.S. at 243-44)). Although a guilty plea may be unknowing or "involuntary when an attorney materially misrepresents the consequences of the plea," neither an attorney's "erroneous sentence estimate" nor "a defendant's erroneous expectation, based on his attorney's erroneous estimate," necessarily means that a defendant's resulting conviction violated his or her federal due-process rights. *Fields*, 277 F.3d at 1213-14. Instead, the plea's validity "can be determined only by considering all of the relevant circumstances surrounding it,"[10] *Brady*, 397 U.S. at 749, including whether the defendant was nonetheless "fairly apprised of the consequences of his plea" and whether the defendant's decision to plead guilty was actually "based on" counsel's sentencing advice. *See Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269, 1271-72 (10th Cir. 2010).

---

[10] As noted, *see supra* n.7, the two-part *Strickland* test applies where the "petitioner relies *entirely* on the claim that his plea was 'involuntary' *as a result of* ineffective assistance of counsel because his attorney" misadvised him during the plea process. *Hill*, 474 U.S. at 57 (emphasis added); *accord Lafler*, 132 S. Ct. at 1390 (citing *Hill*, 474 U.S. at 57-59); *Frye*, 132 S. Ct. at 1406 (citing *Padilla*, 559 U.S. 356); *Worthen*, 842 F.2d at 1184 (citing *Hill*, 474 U.S. at 56-57); *Bush v. Neet*, 400 F.3d 849, 853 (10th Cir. 2005) (citing *Worthen*, 842 F.2d at 1184). The federal claim in Ground Two of the amended Petition, and in Proposition Two of Petitioner's OCCA brief, focuses not on whether Mr. Box's advice amounted to ineffective assistance of counsel, but on whether Petitioner understood the direct consequences of pleading guilty.

During the plea colloquy, the trial judge explained to Petitioner that he faced "two possible punishments" if the court accepted his guilty plea under the terms of the proposed plea agreement and that, even if Petitioner was sentenced to the less severe penalty of life in prison with the possibility of parole, Petitioner "must serve . . . 45 years" before he would be eligible for release. Plea Hr'g Tr. 3; *see also* OCCA Op. Den. Cert. at 6-7. Petitioner testified that he understood the court's admonishment. Plea Hr'g Tr. 3. "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings." *Fields*, 277 F.3d at 1214. Thus, it would not have been unreasonable for the OCCA to conclude that, had Petitioner actually "misunderstood or been misinformed about [a] possibility" of serving only 20 or 25 years in prison, the trial judge's "discussion would have alerted [him] to that fact." *Id.*; *see* OCCA Op. Den. Cert. at 6 ("Wood conceded that he did not ask his attorney about any possible misunderstanding about the meaning of a life sentence after the plea colloquy."). Nor was it unreasonable for the OCCA to find that Petitioner's "testimony about a split sentence [was] not credible" because Petitioner "never claimed that he was expecting any type of split sentence or that his plea was based on any representation by [Mr. Box] that he would receive a split sentence." OCCA Op. Den. Cert. at 7; *see* Mot. Hr'g Tr. 28-30; 28 U.S.C. § 2254(d)(2).

Petitioner has not shown that the OCCA's decision rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding. *See Fields*, 277 F.3d at 1214-15; *Crump*, 520 F. App'x at 779; *Brady*, 397 U.S. at 748; *Boykin*, 395 U.S. at 242-44. Accordingly, Petitioner is not entitled to relief on Ground Two. 28 U.S.C. § 2254(d).

### 3. Petitioner's Factual Basis Claim Does Not State a Federal Constitutional Violation

Petitioner asserts in Ground Three that he "was denied due process because an adequate factual basis to support the charge of murder in the first degree" was not established before the trial judge accepted his guilty plea. Pet'r's Br. in Supp. at 45. In particular, Petitioner objects that the "factual basis" statement on his Guilty Plea Form— in which Petitioner admitted that he and his codefendant "struck [and] killed Donovan Nimmo without justification"—did not establish the elements of first-degree murder under Oklahoma law. *See id.* at 45-49; Guilty Plea Form at 4. Reviewing for plain error, the OCCA rejected this claim because it concluded that "[t]he evidence adduced at the preliminary hearing supplied the necessary additional factual support to cure any shortcoming in the statement of the factual basis on the plea form itself." OCCA Op. Den. Cert. at 7-9; *see* Prelim. Hr'g Tr. 152-53, 189, 191, 279-81, 287, 310-19, *State v. Wood*, No. CF-2008-44 (Blaine Cnty. Dist. Ct. Dec. 11-12, 2008) (testimony regarding Petitioner's alleged involvement in Mr. Nimmo's disappearance and death). In reaching this conclusion, the OCCA noted the "extensive evidence presented" at the preliminary hearing and credited the trial court judge's finding at the hearing on Petitioner's motions to withdraw his guilty plea that "[t]he evidence in the case described with some specificity the violent death that Donovan Nimmo met after being lured to Watonga,

Blaine County, by Mr. Wood and his codefendant, Jennifer Durbin. He was beaten repeatedly and his body was dumped on a bridge and never found." OCCA Op. Den. Cert. at 8-9 & n.4 (citing Mot. Hr'g Tr. 43-44).

"[C]ourts are constitutionally required to establish the factual basis of the plea only if the defendant claims factual innocence when he pleads guilty." *Washington v. Workman*, 376 F. App'x 823, 824-25 (10th Cir. 2010) (citing *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970)). Petitioner did not proclaim his factual innocence when he entered his guilty plea on July 22, 2010. *See* Plea Hr'g Tr. 2-4; Guilty Plea Form at 4; *see also* Mot. Hr'g Tr. 44 ("[Petitioner's] manifestation of innocence on his pro se [post-plea motions] is not consistent with the evidence" presented at his "preliminary hearing and in [Petitioner's] admission on his plea form"). Thus, the federal Constitution did not require the state courts to establish a factual basis for Petitioner's guilty plea before entering a judgment of conviction, and Petitioner's Ground Three "does not state a constitutional violation." *Washington*, 376 F. App'x at 824-25; *see also Green v. Koerner*, 312 F. App'x 105, 108 (10th Cir. 2009); *Perkis v. Sirmons*, 201 F. App'x 648, 651 (10th Cir. 2006).

Petitioner's assertion that he must personally admit each of the material facts supporting his conviction likewise finds no support in the clearly established federal law. *See* Pet'r's Br. in Supp. at 45 (citing *King v. State*, 553 P.2d 529 (Okla. Crim. App. 1976)). "A plea of guilty is the equivalent of admitting all material facts alleged in the charge," *United States v. Kelsey*, 15 F.3d 152, 153 (10th Cir. 1994), which in this case is all that the federal Constitution requires to sustain Petitioner's conviction. *See Alford*,

400 U.S. at 32 ("Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind. The plea usually subsumes both elements . . . even though there is no separate, express admission by the defendant that he committed the particular acts claimed to constitute the crime charged in the indictment."). Accordingly, Petitioner is not entitled to relief on Ground Three. *See Washington*, 376 F. App'x at 825 (citing *Alford*, 400 U.S. at 37-38); *Perkis*, 201 F. App'x at 651 (citing 28 U.S.C. § 2254(d)).

4. The OCCA's Rejection of Petitioner's Ineffective-Assistance-of-Counsel Claims

Ground Four contains two ineffective-assistance-of-counsel claims. Petitioner first asserts that Mr. Box, who represented Petitioner at his change-of-plea hearing, was ineffective because he failed to request "medical records from the jail" showing that "Petitioner was being treated and medicated for a major mental illness in the months leading up to and on the actual day his plea was entered." Pet'r's Br. in Supp. at 53, 54 ("Petitioner was taking daily 40 mg doses of citalopram, commonly known as Celexa, for anxiety and depression."). Petitioner also asserts that Mr. Allsup, who represented Petitioner at the hearing on his motions to withdraw his guilty plea, was ineffective because he relied solely on Petitioner's testimony about his mental status in July 2010 without calling Petitioner's family members to corroborate this testimony or "conduct[ing] a minimal amount of follow-up investigation" about Celexa's alleged side

effects.  *Id.* at 55, 56 ("Celexa is known to have side effects that can impair a person's judgment.").

To prevail on an ineffective-assistance-of-counsel claim, Petitioner must show that counsel's challenged acts or omissions fell below an objective standard of professional reasonableness (the "performance" prong) and that there is a reasonable probability that, but for those unprofessional errors, the result of the proceeding would have been different (the "prejudice" prong).  *Strickland*, 466 U.S. at 690-94.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding at issue. *Id.* at 694; *see also Hill*, 474 U.S. at 59-60 (defendant's decision to plead guilty); *Garcia v. Bravo*, 181 F. App'x 725, 731 (10th Cir. 2006) (denial of defendant's motion to withdraw guilty plea).  *Strickland*'s performance and prejudice prongs can "be addressed in any order, and failure to satisfy either is dispositive."  *Hooks v. Workman*, 689 F.3d 1148,  1186 (10th Cir. 2012).

The OCCA correctly identified the legal standard governing Petitioner's ineffective-assistance-of-counsel claims with respect to Messrs. Box and Allsup.  *See* OCCA Op. Den. Cert. at 9-10.  The appellate court rejected both claims on the merits because it concluded that Petitioner's

> ability to reject the same plea offer while on the same medication coupled with his statements about accepting the plea offer to avoid the death penalty was sufficient to defeat his claim that the medication made him so agreeable and so indifferent to his fate that he was rendered incompetent. The district court properly rejected Wood's claim of incompetency and he has not shown that either of his counsel were ineffective.

*Id.* at 11. The OCCA did not specify whether its denial of Petitioner's *Strickland* claims was because counsel's alleged errors were not objectively unreasonable, or because Petitioner did not suffer prejudice, or both. *See id.* Nonetheless, this Court must defer to the OCCA's conclusion unless Petitioner shows that "there was no reasonable basis for the state court to deny relief" on these claims given the record before it at the time.[11] *Richter*, 562 U.S. at 99, 102; *see also Pinholster*, 563 U.S. at 180-81.

Petitioner has not done so. To prevail on his claim regarding Mr. Box, Petitioner had to show that counsel's failure to investigate was objectively unreasonable and that there is a "reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59-60. Where, as here, trial counsel's alleged error is a failure to investigate, the court's determination of

---

[11] As on direct appeal, Petitioner's arguments in support of his ineffective-assistance-of-counsel claims rely heavily on family members' affidavits and jail medical records that Petitioner's appellate counsel obtained while preparing the petition for writ of certiorari to the OCCA. *See* Pet'r's Br. in Supp. at 50-51, 54-56, 60; Pet'r's OCCA Br. at 40-41, 43-48; Pet'r's OCCA Appl. Evid. Hr'g & Affs. (Doc. No. 4-9) at 2-5, 9-12, *Wood v. State*, No. C-2011-548 (Okla. Crim. App. filed Dec. 5, 2011) (citing OCCA R. 3.11(B)(3)(b)). The OCCA denied Petitioner's request for an evidentiary hearing to develop these claims because it concluded that Petitioner's proffered medical records and affidavits "failed to show by clear and convincing evidence that there [was] a strong possibility that trial counsel was ineffective for failing to investigate his competency and use available evidence either at the plea hearing or at the hearing on his motion to withdraw [his] plea." OCCA Op. Den. Cert. at 10-11 (citing OCCA R. 3.11; *Simpson v. State*, 230 P.3d 888, 905-06 (Okla. Crim. App. 2010)). In so doing, the OCCA "necessarily" decided that Petitioner had "'not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*.'" *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013) (quoting *Simpson*, 230 P.3d at 906).

whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59 (internal quotation marks omitted).

Petitioner testified that Mr. Corgan and Mr. Box separately advised him to accept the State's plea offer because, based on their review of the State's evidence, both attorneys expected that Petitioner would be convicted and sentenced to death if he went to trial. *See* Mot. Hr'g Tr. 14, 21. Petitioner rejected Mr. Corgan's advice, but he later accepted Mr. Box's advice as his last chance "to escape the death penalty" because he trusted Mr. Box's assessment of the case and he "didn't want to die." *See id.* at 12, 14-15, 26. Although Petitioner alleges that he would not have pled guilty "but for" Mr. Box's "errors," he never explains how (or even whether) the information in his jail records or his family members' affidavits might have persuaded a rational person to take his or her chances at trial or would have affected Mr. Box's recommendation as to the plea. *Hill*, 474 U.S. at 59-60; *see also Padilla*, 559 U.S. at 372 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). Thus, the OCCA could have reasonably concluded that Mr. Box's failure to investigate Petitioner's psychiatric treatment did not prejudice his client. *See Hill*, 474 U.S. at 59-60; *McLuckie v. Abbott*, 337 F.3d 1193, 1202 (10th Cir. 2003) (denying relief under § 2254(d)).

To prevail on his claim regarding Mr. Allsup, Petitioner had to show that counsel's decision to rely exclusively on Petitioner's hearing testimony was objectively

unreasonable and that there is a reasonable probability that, but for that decision, the trial court would have granted Petitioner's motions to withdraw his guilty plea. *Garcia*, 181 F. App'x at 731. As he did on direct appeal, Petitioner asserts that had Mr. Allsup "conducted a minimal amount of follow-up investigation, he would have discovered that several members of Petitioner's family were willing and available to testify about the changes in [Petitioner's] behavior" while he was taking Celexa. Pet'r's Br. in Supp. at 56. More specifically, Petitioner asserts that his father and children would have testified that, "at some point" before he pled guilty, Petitioner started acting "spacey" and "confused" and did not appear to appreciate the seriousness of the situation. *See id.* at 54-56; Pet'r's OCCA Appl. Evid. Hr'g & Affs. at 9, 10, 12. Liberally construed, Petitioner here contends there is a reasonable probability that his family members' testimony would have persuaded the trial court judge that Celexa's alleged side effects made Petitioner "so agreeable and so indifferent to his fate," OCCA Op. Den. Cert. at 11, as to invalidate his guilty plea. *See* Mot. Hr'g Tr. 11-13; Pet'r's Br. in Supp. at 54-56; Pet'r's OCCA Br. at 44-47.

The OCCA effectively rejected this argument when it concluded that the family members' proffered affidavits "failed to show" that Mr. Allsup "was ineffective for failing to . . . use available evidence . . . at the hearing on [Petitioner's] motion to withdraw [his] plea." OCCA Op. Den. Cert. at 10-11; *accord Lott*, 705 F.3d at 1213. While the exact basis for its decision is not clear, the OCCA could have reasonably concluded that Mr. Allsup's "failure to call witnesses whose testimony would be corroborative or cumulative of evidence already presented" at Petitioner's motion hearing

44

did not undermine confidence in the trial court's ruling.  *Snow v. Sirmons*, 474 F.3d 693,

729, 730-31 (10th Cir. 2007); *see* Mot. Hr'g Tr. 9-13, 18, 25-26 (Petitioner testifying at

length as to Celexa's effects on him); *see also Williams*, 782 F.3d at 1216 ("Even if other

witnesses might have offered additional details or unique perspectives, we fail to see how

the exclusion of this largely cumulative evidence might undermine confidence in the

outcome.").

The trial court denied Petitioner's motion to withdraw his guilty plea because it

found that Petitioner "failed to present sufficient evidence for the Court to grant [that]

request" and the evidence supported a finding that Petitioner's plea was legally sound.

*See* Mot. Hr'g Tr. 43-45.  In particular, the trial court judge cited evidence that Petitioner

"did not rush into the plea," stated under oath that he was not taking any medications that

affected his ability to understand the plea proceedings, and was represented by two "very

experienced attorneys" who recommended that Petitioner accept the State's plea offer in

order to avoid a substantial risk that he would be sentenced to death if he went to trial.

*See id.*  On this record, the OCCA could have reasonably concluded that there was not a

reasonable probability that the family members' additional testimony would have

changed the trial court's ruling.  *See Williams*, 782 F.3d at 1216; *Snow*, 474 F.3d at 729.

Accordingly, Petitioner is not entitled to relief on Ground Four.  *See* 28 U.S.C. § 2254(d).

### 5.   The OCCA's Rejection of Cumulative Error Claim

Petitioner asserts in Ground Five that the errors in his case cumulatively deprived

him of a fair hearing and due process of law.  Pet'r's Br. in Supp. at 64.  The OCCA

rejected this claim because it found "no errors, either individually or when considered in

a cumulative fashion, that merit[ed] relief in this case." OCCA Op. Den. Cert. at 12 ("[A] cumulative error claim has no merit when this Court fails to find any error on appeal.").

The "cumulative error" doctrine is an extension of the harmless-error doctrine, *Cargle v. Mullin*, 317 F.3d 1196, 1220 (10th Cir. 2003), in which the reviewing court aggregates all of the federal constitutional "errors that individually might be harmless and analyzes whether their cumulative" impact "so infected" the criminal proceeding "with unfairness as to make the resulting conviction a denial of due process." *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005) (internal quotation marks omitted). The federal courts of appeals "are split on 'whether the need to conduct a cumulative-error analysis is clearly established federal law' for AEDPA purposes—and [the Tenth Circuit's] position on the question is murky at best."[12] *Eizember v. Trammell*, 803 F.3d 1129, 1147 n.8 (10th Cir. 2015) (quoting *Hooks*, 689 F.3d at 1194 n.24). It is beyond dispute, however, that the cumulative-error doctrine applies only where there are two or more actual constitutional errors. *Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003); *see also United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.").

---

[12] However, the Tenth Circuit has also noted that its decisions "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014) (internal quotation marks omitted); *cf. Bland v. Sirmons*, 459 F.3d 999, 1029 (10th Cir. 2006) ("Because the OCCA concluded that the cumulative errors did not deprive [the petitioner] of a fair trial, we must defer to its ruling unless it constitutes an unreasonable application of the cumulative-error doctrine.").

Assuming that such analysis is clearly established law, it was not unreasonable for the OCCA to conclude that Petitioner failed to establish the existence of any federal constitutional error in his case. The undersigned likewise "ha[s] identified here no harmless federal law errors to accumulate." *Eizember*, 803 F.3d at 1147 n.8. Accordingly, Petitioner is not entitled to relief on Ground Five.

C.     *De Novo Review of Ground Seven*

Finally, Petitioner has been found to assert in Ground Seven that his guilty plea was involuntary as a result of ineffective assistance of counsel because Mr. Box "affirmatively misrepresent[ed]" the prison sentence Petitioner "would receive" if he pled guilty under the terms of the State's proposed plea agreement. *See* Pet'r's Br. in Supp. at 41-42. Petitioner states a *Hill* claim insofar as these allegations support a reasonable inference that (1) Mr. Box's advice that Petitioner's agreed-upon term of life imprisonment "could be split where Petitioner would serve 20 [years] in or 25 [years] in, 20 [years] out" was objectively unreasonable given the information available to Mr. Box at the time; and (2) there is a reasonable probability that, but for Mr. Box's erroneous advice, Petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see* Pet'r's Br. in Supp. at 41-42.

To proceed with this claim in federal court, however, Petitioner must at least demonstrate that the relevant facts alleged in his § 2254 Petition are not "so palpably incredible" or "so patently frivolous or false" when compared to the record before this Court "as to warrant summary dismissal" for that reason alone. *Blackledge v. Allison*, 431 U.S. 63, 75-76 (1971). This record includes Petitioner's prior sworn statements and

other relevant testimony, *see id.* at 75-77, as well as "[a]ny state-court findings of fact that bear upon the claim," *Hooks*, 689 F.3d at 1164. The former "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 74; *see also Gaskey v. Hartley*, 280 F. App'x 746, 748 (10th Cir. 2008) ("[W]e have specifically held that a [federal] district court does not err in refusing to hold an evidentiary hearing on the voluntariness of a plea when the habeas petitioner's allegations are contradicted by his statements during the [state-court] plea colloquy." (citing *Lasiter v. Thomas*, 89 F.3d 699, 702-04 (10th Cir. 1996)). The latter "are entitled to a presumption of correctness rebuttable only by 'clear and convincing evidence.'" *Hooks*, 689 F.3d at 1164 (quoting 28 U.S.C. § 2254(e)(1)). Petitioner has not carried either burden.

Petitioner alleges that he wanted to go to trial on the first-degree murder charge and that he decided to plead guilty only after "Mr. Box explained the plea offer in a different way than [how] Mr. Corgan had it explained it previously."[13] Pet'r's Br. in Supp. at 41-42. The OCCA found that Petitioner's "testimony about a split sentence [was] not credible" and Petitioner "never claimed that he was expecting any type of split sentence or that his plea was based on any representation by retained counsel that he would receive a split sentence." OCCA Op. Den. Cert. at 7. Presumably, the OCCA's findings mean that Petitioner failed to establish by a preponderance of the evidence that

---

[13] Petitioner does not allege any facts describing Mr. Corgan's explanation of the proposed plea agreement. Presumably, he means to suggest that Mr. Corgan did not tell Petitioner that the agreed-upon term of life imprisonment "could be split where Petitioner would serve 20 [years] in or 25 [years] in, 20 [years] out."

Mr. Box *actually told* Petitioner that he could "split" his lifetime term of imprisonment into a twenty or twenty-five year term, rather than serving the mandatory minimum forty-five year term of imprisonment that the trial judge described in open court. *Id.* at 6-7; *see Holland v. Jackson*, 542 U.S. 649, 654 (2004). The state court's factual findings alone, which Petitioner does not challenge, may well be sufficient to defeat Petitioner's *Hill* claim in this Court. *Cf. Burt v. Titlow*, 134 S. Ct. 10, 17 (2012) ("It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance. . . . [W]ithout evidence that [counsel] gave incorrect advice . . . [Petitioner] cannot establish that his performance was deficient." (internal quotation marks and citations omitted)).

Even if Mr. Box did make the challenged statement, however, Petitioner still must establish that the statement was both objectively unreasonable and prejudicial. *Strickland*'s performance and prejudice prongs can "be addressed in any order, and failure to satisfy either is dispositive." *Hooks*, 689 F.3d at 1186. In this case, Petitioner's allegation that if not for Mr. Box's advice that his life "sentence could be split" between 25 years "in" and 20 years "out," he would have pled not guilty and would have insisted on going to trial is "'wholly incredible' in light of the detailed state court record." *Lasiter*, 89 F.3d at 703 (quoting *Phillips v. Murphy*, 796 F.2d 1303, 1305 (10th Cir. 1986)). First, during the plea colloquy, the trial judge explained to Petitioner that he faced "two possible punishments" if the court accepted his guilty plea under the terms of the proposed plea agreement and that, even if Petitioner was sentenced to the less severe punishment of life in prison with the possibility of parole, Petitioner "must serve . . . 45

years" before he would be eligible for release.  Plea Hr'g Tr. 3; *see also* OCCA Op. Den. Cert. at 6-7.  Petitioner testified that he understood the court's admonishment, Plea Hr'g Tr. 3, and that he had not been "promised anything by anyone to have [him] enter [his] plea[]," Guilty Plea Form at 4-5.

Second, Petitioner testified at his motion-to-withdraw hearing that Mr. Box and Mr. Corgan each strongly urged Petitioner to accept the State's plea offer to avoid the risk that he would be sentenced to death if he went to trial on the first-degree murder charge.  *See* Mot. Hr'g Tr. 21, 28.  Petitioner testified that he heeded Mr. Box's advice as his last chance "to escape the death penalty" because he trusted Mr. Box's assessment of the case and he "didn't want to die."  *See id.* at 12, 14-15, 26.  Indeed, Petitioner repeatedly stated under oath that he pled guilty to eliminate the risk that a jury would sentence him to death if he went to trial, and that he understood that this particular plea agreement called for "two possible" terms of life imprisonment.  *See, e.g.*, *id.* at 12, 13, 14, 15, 24, 26, 27, 31; Plea Hr'g Tr. 3; Guilty Plea Form at 4-5.  The OCCA credited this testimony in finding that the "prosecution's willingness" not to seek the death penalty "motivated" Petitioner to plead guilty under the terms of this proposed agreement.  *See* OCCA Op. Den. Cert. at 4-5, 11.  Those "terms" included Petitioner's sworn stipulation that he would serve at least 45 years in prison.  Plea Hr'g Tr. 3; Guilty Plea Form at 4.

Viewed against this record, Petitioner's allegation that, but for Mr. Box's advice that the agreed-upon life sentence "could be split" essentially in half, Petitioner would not have pled guilty and would have insisted on going to trial on a capital murder charge is "so palpably incredible" as to warrant summary dismissal.  *Blackledge*, 431 U.S. at 73-

74; *see also Lasiter*, 89 F.3d at 703 ("This court has interpreted *Blackledge* to permit summary disposition of habeas corpus petitions based on claims of unkept promises and misunderstanding when the [state] court record refutes the claims." (citing *Phillips*, 796 F.2d at 1305)). Accordingly, Petitioner's *Hill* claim should be denied. *Cf. Gaskey*, 280 F. App'x at 747, 748 (denying certificate of appealability from district court's order denying § 2254 petition, including a *Hill* claim, on the merits) (citing *Lasiter*, 89 F.3d at 703)); *Lasiter*, 89 F.3d at 701, 703 (affirming district court's order dismissing § 2254 petition with prejudice).

## RECOMMENDATION

As detailed above, it is recommended that Petitioner's motion to amend (Doc. No. 47) the Petition by deleting the claims referred to herein as Ground Six—and which Petitioner lists as "Ground V"—be granted. Further, it is recommended that the amended Petition for Writ of Habeas Corpus (Doc. No. 1) be denied in its entirety. If these recommendations are accepted, Petitioner's pending motion for an Evidentiary Hearing and Appointment of Counsel (Doc. No. 45) should be denied. *See* 28 U.S.C. § 2254(d); *Pinholster*, 563 U.S. at 181; *Gaskey*, 280 F. App'x at 748; *Lasiter*, 89 F.3d at 702-04; *Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 333-34 (10th Cir. 1994) (holding that a federal habeas court must appoint counsel to represent a petitioner only when the court determines that an evidentiary hearing is required).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by January 11, 2017, in accordance with 28

U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 22nd day of December, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE